Rhonda MILLER, Richard Miller and Kay Miller, Plaintiffs-Appellants,††

v.

Craig J. THOMACK, Defendant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant-Co-Appellant,

James D. THOMACK, ABC Insurance Company, as insurer of James Thomack, Michelle Melberg, DEF Insurance Company, as insurer of Michelle Melberg, Defendants,

Kimberly RANSOM, Defendant-Respondent,†

FIRE INSURANCE EXCHANGE,† Kurt D. Pamperin, Sr., Kurt Pamperin, Jr., United Fire & Casualty Company, a foreign corporation, Waupaca County, as agent for the State of Wisconsin, Brian Clary, GHI Insurance, as insurer of Brian Clary, John Doe, Susan Roe, Defendants,

Karen MILLER, Defendant-Respondent,

NOP INSURANCE, as insurer of Karen Miller, Defendant,

Craig J. THOMACK, Third Party Plaintiff-Co-Appellant,

and James D. THOMACK, Third Party Plaintiff,

Jason BEATTIE, Third Party Defendant-Respondent,

Lee BEATTIE, Carol Beattie and KLM Insurance Company, as insurer of Jason Beattie, Lee Beattie and

††Petition to cross-review denied.
†Petition to review granted.

Carol Beattie, Third Party Defendants. [Case No. 95–1684]

Rhonda MILLER, Richard Miller, and Kay Miller, Plaintiffs-Respondents,

v.

Craig J. THOMACK, Defendant-Appellant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., James D. Thomack, ABC Insurance Company, Michelle Melberg, DEF Insurance Company, Kimberly Ransom, Fire Insurance Exchange, Waupaca County, Brian Clary, GHI Insurance Company, John Doe, Susan Roe, Karen Miller, and NOP Insurance Company, Defendants,

Craig J. THOMACK, and James D. Thomack, Third Party Plaintiffs,

Kurt D. PAMPERIN, Sr., Kurt Pamperin, Jr., and United Fire & Casualty Company, Defendants-Appellants,

v.

Jason BEATTIE, Lee Beattie, Carol Beattie, and KLM Insurance Company, an insurer of Jason Beattie, Lee Beattie and Carol Beattie, Third Party Defendants. [Case No. 95-1766]

Court of Appeals

*Nos. 95–1684, 95–1766. Submitted on briefs February 12, 1996.—Decided August 29, 1996.*

(Also reported in 555 N.W.2d 130.)

For the defendants-appellants, Kurt D. Pamperin, Sr., Kurt Pamperin, Jr., and United Fire & Casualty Company, the cause was submitted on the briefs of *William J. Ewald* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay.

For the plaintiffs-appellants and plaintiffs-respondents, Rhonda Miller, Richard Miller and Kay Miller, the cause was submitted on the briefs of *Peter S. Nelson* and *Robert N. Duimstra* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.* of Appleton.

For the defendant-respondent, Kimberly Ransom, and for the defendant, Fire Insurance Exchange, the

cause was submitted on the brief of *George F. Savage* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

For the defendant-respondent, Karen Miller, the cause was submitted on the brief of *John F. Mayer* and *William R. Wick* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

VERGERONT, J.   This appeal involves the interpretation and application of §§ 125.07(1)(a) and 125.035, STATS., which relate to civil liability for injuries caused by an underage person who has consumed alcohol.[1] Rhonda Miller was injured in an automobile

---

[1] The legal drinking age is twenty-one. Section 125.02(8m), STATS.

Section 125.07(1), STATS., provides:

**Underage and intoxicated persons; presence on licensed premises; possession; penalties.** (1)   Alcohol beverages; restrictions relating to underage persons.

(a)   Restrictions. 1. No person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

2.   No licensee or permittee may sell, vend, deal or traffic in alcohol beverages to or with any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

3.   No adult may knowingly permit or fail to take action to prevent the illegal consumption of alcohol beverages by an underage person on premises owned by the adult or under the adult's control. This subdivision does not apply to alcohol beverages used exclusively as part of a religious service.

4.   No adult may intentionally encourage or contribute to a violation of sub. (4)(a) or (b).

Section 125.035, STATS., provides in part:

**Civil liability exemption: furnishing alcohol beverages.**

247

accident when the automobile in which she was a passenger went off the road. Craig Thomack, the driver of that automobile, and Rhonda Miller had consumed beer before the accident occurred. Thomack was sixteen and Rhonda Miller was fifteen. They had consumed beer on property leased by Kurt Pamperin, Sr. and Kurt Pamperin, Jr., who operated Pamperin's Bear Lake Bar & Hall on that property. However, the beer was not purchased at Pamperin's Bear Lake Bar & Hall.

The Pamperins and their insurer, United Fire & Casualty Company, appeal the trial court's denial of their motion for summary judgment, raising a number of issues. We address only the issue of their liability under § 125.07(1)(a)3, STATS., because that is dispositive. We conclude that there are no issues of fact concerning whether the Pamperins violated the statute and that they are entitled to judgment as a matter of

(1)   In this section, "person" has the meaning given in s. 990.01(26).

(2)   A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.

    . . . .

(4)(a)   In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a).

(b)   Subsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party. In determining whether a provider knew or should have known that the underage person was under the legal drinking age, all relevant circumstances surrounding the procuring, selling, dispensing or giving away of the alcohol beverages may be considered, including any circumstance under subds. 1. to 4. . . .

248

law. We therefore reverse the trial court's denial of their motion for summary judgment.[2]

Rhonda Miller and her parents appeal from the trial court order granting summary judgment to Kimberly Ransom, Karen Miller, Jason Beattie and their insurers,[3] all of whom contributed money to purchase the beer.[4] They were all under twenty-one at the time. Rhonda contends that the trial court erred as a matter of law in ruling that these three did not violate § 125.07(1)(a)1, STATS., which provides that "no person may procure for, sell, dispense, or give away" any alcohol beverages to an underage person. She contends that the court also erred in ruling that their negligence, if any, was less than hers. We conclude that contributing money to the purchase of alcohol under the circumstances presented by this record violates the statute and is therefore negligence per se. We also conclude that the issue of comparative negligence should be decided by the jury. Finally, we conclude that Karen, Ransom and Beattie are not immune from liability under § 125.035, STATS. We therefore reverse the grant of summary judgment to these defendants.

---

[2] The Pamperins also contend that: their negligence, if any, was not a substantial cause of the accident; Rhonda Miller is barred from any recovery against them because her consumption of alcohol was a cause of her injuries; and even if they are causally negligent, Rhonda Miller's negligence was greater as a matter of law. We do not address these contentions.

[3] In this opinion we will refer to Rhonda and Karen by their first names to distinguish them from one another. Our reference to Rhonda also includes her parents when we are referring to their position as plaintiffs.

[4] Ransom and Beattie admitted to contributing. Karen denied contributing, but other witnesses stated that she did. For purposes of the summary judgment motion, it is assumed that she did.

## BACKGROUND

For purposes of this appeal, these facts are not disputed. Early in the evening of June 12, 1990, Thomack picked up Rhonda and her cousins, Karen and Ransom. There was discussion among the four about getting beer and they drove to a parking lot where young people were gathered. Brian Clary, who was twenty-one, said he would buy beer for them.[5] He bought either a twelve pack or a case of beer for them at a local liquor store. Karen and Ransom contributed money for the purchase of the beer, as did Beattie. The beer was put in Thomack's car and Thomack drove Rhonda, Karen and Ransom to a nearby unoccupied cabin, where they consumed some of the beer. No one served anyone else beer.

From the cabin, Thomack drove the other three to the parking lot of Pamperin's Bear Lake Bar & Hall on Bear Lake. The beer either remained in the back of the car, was placed beside it, or on the trunk, and any of the group who wanted a beer took one. No one distributed or passed the beer purchased by Clary to others, and consumption was voluntary. Thomack, Rhonda and others consumed beer on the beach area. None of the alcohol consumed by Thomack or Rhonda was purchased from Pamperin's Bear Lake Bar & Hall.

The Pamperins leased the tavern from a relative of the person who owns the Bear Lake Campground, which is located next to the tavern. The leased property includes the tavern building, the parking lot to the east of the building and "outback." "Outback" means the area between the building and the lake, which includes

---

[5] Rhonda testified that she asked Clary to buy the beer. Clary testified that Thomack, not Rhonda, asked him. This conflict is not material to the issues on appeal.

a block of lake frontage. The lake shore is approximately 300 feet from the tavern.

Rhonda left Bear Lake in the early morning of June 13 as a passenger in Thomack's car. While passing another car, Thomack lost control of his car and it went off the road and struck a tree. Rhonda was seriously injured. She was not wearing a seat belt and was not then in the habit of wearing a seat belt.

Rhonda and her parents sued Thomack, Karen, Ransom, the Pamperins and their respective insurers. Thomack joined Beattie, his parents and their insurer, alleging that Beattie aggravated Rhonda's injuries when he extricated her from the vehicle. There were various cross-claims among the defendants. Karen, Ransom, Beattie and the Pamperins moved for summary judgment. The court ruled that contributing money to purchase the beer did not constitute furnishing alcohol to a minor in violation of §§ 125.035 or 125.07, STATS. It determined as a matter of law that Rhonda Miller was more negligent than Karen Miller or Kimberly Ransom and dismissed them from the action. It dismissed Beattie because there was no evidence that he caused, exacerbated or contributed to Rhonda's injuries. The trial court denied the Pamperins' motion for summary judgment, concluding that there were disputed issues of fact as to whether the consumption of alcohol took place on premises owned by the Pamperins or under their control and whether they had knowledge as required by § 125.07(1)(a)3.

Rhonda appealed from the grant of summary judgment to Karen, Ransom and Beattie. We granted the Pamperins' petition for leave to appeal the denial of their motion for summary judgment, and consolidated the two appeals.

We review summary judgments de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is proper where there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Sections 802.08(2) and (6), STATS.

## LIABILITY UNDER § 125.07(1)(a)3, STATS.

We begin with some background on the common law of civil liability for furnishing alcoholic beverages. In *Sorensen v. Jarvis*, 119 Wis. 2d 627, 645, 350 N.W.2d 108, 117 (1984), the supreme court altered the common law immunity for vendors of intoxicating liquors in actions brought by someone who had been injured as a result of the purchaser's intoxication. The court held that an injured person had a cause of action against a retailer who sells alcohol beverages to someone whom the retailer knows or should know is underage, and when the underage person's consumption of alcohol is a substantial factor in causing the injury.

In *Koback v. Crook*, 123 Wis. 2d 259, 276, 366 N.W.2d 857, 865 (1985), the court held that a social host is liable where the host serves alcohol to an underage person, knows or should know the person is underage, knows or should know the person will drive, and where the underage person's consumption of alcohol is a substantial factor in causing a third-party injury. The rationale of *Koback* and *Sorensen* was that the negligent supplier of an intoxicant to a minor, under "the rules of Wisconsin tort law, may be liable in the same manner and to the same extent as any person who engages in negligent conduct." *Id.* at 273, 366 N.W.2d at 864. Conduct is negligent either because it

will foreseeably cause harm, or because it violates a safety statute where the statutory purpose is to avoid or diminish the likelihood of harm that resulted; the latter case is negligence per se. *Id. Sorensen* and *Koback* both concerned negligence per se because the complaints alleged violations of statutes prohibiting the furnishing of alcoholic beverages to underage persons. *Id.* at 266, 366 N.W.2d at 860.[6]

The statute the Pamperins are alleged to have violated is § 125.07(1)(a)3, STATS., which provides:

> No adult may knowingly permit or fail to take actions to prevent the illegal consumption of alcohol beverages by an underage person on premises owned by the adult or under the adult's control. This subdivision does not apply to alcohol beverages used exclusively as part of a religious service.

■
The Pamperins first argue that this statute does not apply to them because § 125.02(14m), STATS., defines "premises" as "the area described in a license or permit" and their license states: "Pamperin's Bear Lake -R1- Manawa, WI. 54949- Sec 4 -State Hwy 22-110. Bar, Hall, back porch & Concession Stand." It is undisputed that Thomack and the others did not consume alcohol in these areas. Rhonda responds that the trial court correctly concluded that "premises" was not limited to the area described in the license but includes any area which the adult owns or controls. Assuming without deciding that "premises" has this broader definition, we nevertheless conclude that the trial court

---

[6] The predecessor to § 125.07(1)(a)1, STATS., was the safety statute allegedly violated in *Sorensen,* and the predecessor to § 125.07(1)(a)2 , STATS., was the safety statute allegedly violated in *Koback. See Koback*, 123 Wis. 2d at 266, 366 N.W.2d at 860.

erred in denying the Pamperins' motion for summary judgment. We reach this conclusion because we are unable to find evidence, including reasonable inferences drawn in Rhonda's favor, that creates a genuine factual issue that the Pamperins knew of the underage drinking occurring in the parking lot and the beach area that evening.[7]

There was evidence that Clary and his uncle asked the person bartending that evening, Kurt Pamperin, Jr., for permission for Clary and his friends to swim because there was a sign saying "No swimming after dark." According to Clary, Pamperin agreed. Since Pamperin testified he did not recall this, or recall that anyone was on the beach area that evening, there is a genuine factual issue as to whether Pamperin knew young people were on the beach area swimming that night. The court reasoned that a reasonable inference could be drawn from this evidence that Pamperin knew that "something that teenagers do was likely to occur, one of which is consumption of alcoholic beverages." However, the statute requires that Pamperin "*knowingly* permitted or failed to prevent the consumption of alcohol." [Emphasis added.] We conclude that in order to meet this standard, there must be evidence, or a reasonable inference from evidence, that Pamperin actually knew underage drinking was occurring or going to occur that evening. His knowledge that young

---

[7] We reject the Pamperins' argument that there is no evidence that they controlled the beach area. There is this evidence: the beach area is part of the property they lease; it can be reached only through the tavern or through a gate on the property they lease; although they always keep the gate open so anyone can use the beach, they can lock the gate if they choose; and they are responsible for the maintenance and repairs and paying the taxes for the beach area.

people were swimming on the beach does not, in itself, give rise to a reasonable inference that he actually knew they were or would be drinking.

Pamperin testified that he did not go outside that evening, did not see any young people and did not know about any drinking that evening. There is no evidence, or reasonable inferences from evidence, that disputes this. There was testimony from some of the young people that they were being loud and were afraid someone would complain. But Clary testified that when he was inside the tavern having a beer with his uncle at the bar, he could not hear the others outside. It is undisputed that none of the group went inside the tavern except Rhonda, Karen and Ransom, who used the bathroom. They could be seen from the bar, and their clothes were wet, but there is no evidence that anything about their behavior in the tavern suggested they were drinking alcohol.

We have also considered whether there is evidence or reasonable inferences from evidence that Pamperin, from inside the tavern, saw young people drinking, or saw the beer cans on the picnic table near the beach area. There are windows in the tavern facing the lake and Pamperin testified that when he is serving at the bar he can see the lake. Rhonda testified that "you can see from the bar where the beach is." But Clary, who was sitting at the bar that night, testified that you could not see the beach from the bar at night unless you went right up to the window. Since neither Pamperin nor Rhonda testified that the beach area could be seen from the bar at night, their testimony does not permit a reasonable inference that Pamperin saw beer cans on the picnic table or young people on the beach drinking alcohol that night. Thomack's testimony that he saw "the owner" in the bar through the window when he,

Thomack, was outside also does not give rise to a reasonable inference that Pamperin saw Thomack or others through the windows and, more particularly, saw them do anything that indicated alcohol consumption.

Rhonda suggests that her testimony that an older man with white hair opened the gate for them is some evidence that the Pamperins saw them, and, by implication, were outside and saw the beer cans on the picnic table or in the parking lot or in the young people's hands. However, there is no evidence linking this person to the Pamperins. Kurt Pamperin, Jr. was the only licensee or employee present that evening, and the description of the older man is inconsistent with Pamperin's age and appearance.

Rhonda points to Pamperin's testimony that he knew there "was the potential" for underage drinking on the beach. He testified he had such problems three times in the past four years. On those occasions, he simply told the people to leave and that he would lock the gate if there were continuing problems. There is no evidence that the beach area had a reputation as a place underage persons could drink or that any of the underage persons drinking there that evening had done so before. Pamperin denied that he knew any of these particular young people before the accident, and no evidence suggests otherwise. The most that can be reasonably inferred from this evidence is that Pamperin knew underage persons might drink on the beach. But the evidence does not give rise to a reasonable inference that he knowingly permitted or failed to prevent consumption of alcohol by these underage persons on that night.

Rhonda argues that even if the Pamperins did not violate the statute, they are negligent under common

law principles because it was reasonably foreseeable that underage persons would drink on the beach and then drive, causing harm. We decline to create a common law duty that is broader than the duty imposed by § 125.07(1)(a)3, STATS. *See Smith v. Kappell*, 147 Wis. 2d 380, 388, 433 N.W.2d 588, 591 (Ct. App. 1988) (extension of liability based on common law negligence to conduct that does not violate § 125.07(1)(a)3 goes beyond prior decisions of supreme court).

## LIABILITY UNDER § 125.07(1)(a)1, STATS., FOR CONTRIBUTING TO PURCHASE

Rhonda contends that the trial court erred in concluding that Karen, Ransom and Beattie did not violate § 125.07(1)(a)1, STATS., by contributing to the purchase of the beer. The statute provides: "No person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age."

"Person" in this paragraph refers to both adults and children. *Kappell*, 147 Wis. 2d at 385, 433 N.W.2d at 590. In *Kappell*, we held that it was a violation of the statute, and negligence per se, for a sixteen-year old to give another underage person alcohol. The sixteen-year old had gone with the underage person and another of apparent legal drinking age to buy beer. They drank beer at the home of a friend. Later in the car, the sixteen-year old handed the underage person, who was driving, a beer. *Id.* at 383-84, 433 N.W.2d at 589-90. Because the issue focused on whether § 125.07(1)(a)1, STATS., applied to a minor, we did not discuss which particular term of § 125.07(1)(a)1 this conduct violated.

In this case, we focus on the term "procure for." "Procure" is not defined in the statute. We therefore construe the word according to its ordinary and accepted meaning, and we may consult a dictionary for that purpose. *In the Interest of Christopher D.*, 191 Wis. 2d 680, 704, 530 N.W.2d 34, 43 (Ct. App. 1995).

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) lists the following pertinent definitions of "procure":

> 1a(1) to get by possession: obtain, acquire . . . especially to get possession of by particular care or effort . . . and sometimes by devious means . . .
>
> 2a(1) to cause to happen or be done: bring about: effect . . . .

We conclude that when an individual contributes money for the sole purpose of purchasing alcohol knowing that it will be consumed by an underage person, that individual is procuring alcohol for the underage person. Applying the first dictionary definition, that individual is obtaining alcohol for the underage person, with particular effort, and by devious means. Applying the second definition, which is perhaps even more apt, that individual is bringing about the consumption of alcohol by the underage person.

Clary was willing to purchase the beer for the underage persons in the car, but he needed money, and a reasonable inference from the undisputed facts is that he was not going to use his own. For purposes of this appeal, it is undisputed that when Karen, Ransom and Beattie contributed the money, they knew Clary was going to use it to purchase beer for the persons in

the car, including Thomack, and they knew Thomack was underage. We conclude this constitutes a violation of § 125.07(1)(a)1, STATS., and is therefore negligence per se.

Karen and Ransom[8] argue that cases from other jurisdictions support their position that underage persons who do nothing more than contribute to a common fund for the purchase of alcohol do not "furnish" alcohol to other underage persons. However, because the statutory language and controlling precedent in those cases differ from our own, we do not find them persuasive. The attempt to distinguish the conduct of underage persons drinking with friends from the conduct of adults is not, in our view, a viable distinction after *Kappell*. And we do not view contributing money for the purchase of the beer as somehow less significant in making the beer available than the act of handing a beer to a friend, which was the conduct found to violate the statute in *Kappell*.

Rhonda also argues that the court erred in determining that, as a matter of law, any negligence on the part of Karen, Ransom or Beattie was less than hers.[9] We agree with Rhonda that the comparative negligence of these persons cannot be properly resolved on this motion for summary judgment.

The apportionment of negligence is within the sound discretion of the jury based upon the inferences

---

[8] Beattie did not file a brief on appeal.

[9] The court did not expressly make this determination with respect to Beattie, as it did for Karen and Ransom. However, we agree with Rhonda that the court's decision and dismissal of all claims against Beattie alleging violations of §§ 125.07 and 125.035, STATS., implies that the court made the same determination with respect to Beattie.

it draws from the evidence presented together with its determination of the standard of care required of the parties. *Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 535, 538 N.W.2d 630, 637 (Ct. App. 1995). Summary judgment should be used only in the rare case where it is clear and uncontroverted that one party is more negligent than another and that no jury could reach a conclusion to the contrary. *Id.*

It is undisputed that Rhonda did not wear a seat belt and that she had at least three or four beers. She knew Thomack had been drinking. The testimony is conflicting on how much Thomack had to drink, whether he was acting drunk, and whether his ability to drive was impaired. Karen permitted Thomack to drive her home approximately an hour or two before the accident, and Ransom as well as Rhonda went along on this trip. One reasonable inference from this is that neither Karen nor Ransom perceived that Thomack's ability to drive was impaired. Given the conflicting testimony and competing reasonable inferences that could be drawn from the evidence, we are not persuaded that, as a matter of law, Rhonda's negligence was greater than that of Karen or Ransom or Beattie, who, for purposes of this motion, contributed the money to purchase the beer, knowing that Thomack, who was driving the car, was underage and would be drinking the beer.[10]

---

[10] Because we conclude that Rhonda's negligence is not, as a matter of law, greater than each of the person's contributing to the purchase of the beer, we do not address Rhonda's argument that the negligence of Karen, Ransom and Beattie must be added together before being compared to Rhonda's negligence.

## IMMUNITY UNDER § 125.035, Stats.

Karen and Ransom also argue that they are immune from liability under § 125.035, Stats., which provides that "a person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person." Section 125.035(2). This immunity does not apply, however, "if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol provided to the underage person were a substantial factor in causing injury to a 3rd party. . . ." Section 125.035(4)(b). "Provider" in this context "means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses, or gives away alcohol to an underage person in violation of s. 125.07(1)(a)." Section 125.035(4)(a). Since we have already concluded that contributing to the purchase of alcohol in the factual circumstances presented on this appeal is "procuring" alcohol for an underage person within the meaning of § 125.07(1)(a)1, Stats., Karen, Ransom and Beattie meet the definition of "provider" in para. (4)(b).

Karen and Ransom do not appear to argue that the alcohol they procured for Thomack was not a substantial factor in causing Rhonda's injuries. Their contention is that para. (4)(b) does not apply because Rhonda's injuries resulted at least in part from her own consumption of alcohol. They rely on *Kwiatkowski v. Capitol Indemnity Corp.*, 157 Wis. 2d 768, 461 N.W.2d 150 (Ct. App. 1990).

In *Kwiatkowski*, the complaint alleged that the plaintiff was an underage person who had been furnished alcohol by a vendor. The plaintiff's companion had procured alcohol beverages for the plaintiff. The

plaintiff was injured in an accident when he was driving and that companion, a passenger in his car, was also injured. The injured driver sued his companion and the vendor. We concluded that neither was liable under § 125.035, STATS., because the exception to immunity in subsec. (4) did not apply. We defined the issue as "whether that statute contemplates a cause of action to a minor consumer of alcohol beverages where a third party is injured or whether the cause of action is limited to only the injured third party." *Kwiatkowski*, 157 Wis. 2d at 775, 461 N.W.2d at 153. We decided that the language of the statute was ambiguous and we concluded, based on the Legislative Reference Bureau's analysis of the statute, that the legislature was reacting to the new common law announced in *Sorensen* and *Koback*. Since those were both third-party actions, we concluded that the legislature's nonliability exception applied only to third-party actions. *Id.* at 776, 461 N.W.2d at 153.

*Kwiatkowski* does not resolve the issue before us because the plaintiff in this case is alleging that she was injured because the defendants provided alcohol for the underage driver, Thomack. From the perspective of Thomack's illegal consumption of alcohol, Rhonda is the injured third party and, since she is the plaintiff, this could be considered a third-party action.

We recognize that in *Kwiatkowski*, we also relied on the doctrine that statutes in derogation of common law should be strictly construed and should not be interpreted in derogation of common law "unless the purpose to effect such a change is clearly expressed therein and such purpose is demonstrated by language which is clear, unambiguous and peremptory." *Id.* We added that the legislature in § 125.035(4)(b), STATS., "has not sanctioned by clear, unambiguous and per-

emptory language a cause of action against a provider by a minor plaintiff whose injuries, at least in part, result from his own consumption of alcohol beverages." *Id.* at 777, 461 N.W.2d at 153-54. It is this language that Karen and Ransom rely on to argue that, because Rhonda consumed alcohol and there is evidence that her injuries resulted at least in part from that consumption, they are immune from liability.

In reviewing our discussion in *Kwiatkowski* of the rule that statutes in derogation of common law should be strictly construed, we see that we mistakenly applied the rule to narrow the exception to nonliability. Since *Sorensen* and *Koback* altered common law by abrogating civil immunity, and since § 125.035, STATS., was intended, in our view, to modify that new common law by creating immunity, we should have stated that clear, unambiguous and preemptory language was necessary to *establish* immunity rather than the other way around. However, our discussion of this point in *Kwiatkowski* was not necessary to our decision. We had already concluded, based on the legislative history of § 125.035, that the statute applied only to third-party actions, which did not include that action by the injured driver. Therefore, our entire discussion on § 125.035 as a statute in derogation of common law is dictum, and we withdrew the last two paragraphs of the opinion. *See State v. Lee,* 157 Wis. 2d 126, 130 n.4, 458 N.W.2d 562, 563 (Ct. App. 1990) (although a published decision of the Court of Appeals is binding on all panels of the court, we may withdraw dictum).

The issue remains whether the exception to immunity for injury to third parties applies in this case. The legislative history of § 125.035, STATS., does not indicate that the situation before us was contemplated in creating the statute. If we adopt Karen's and Ransom's

interpretation, a host of questions arise, none answered by the language of the statute or extrinsic aids. Does immunity apply if the third-party-underage-plaintiff had any alcohol even if it was not a substantial factor in causing the injury? Does immunity apply if the third-party-underage-plaintiff's negligence was less than the negligence of the underage driver who also illegally consumed alcohol? In the absence of any indication that the legislature intended to address these issues when it passed § 125.035, we are hesitant to adopt Karen's and Ransom's interpretation.

Since this statute removes the liability that was the common law after *Sorensen* and *Koback*, the legislature must do so by language that is clear, unambiguous and preemptory. *See Leahy v. Kenosha Memorial Hosp.*, 118 Wis. 2d 441, 449, 348 N.W.2d 607, 612 (Ct. App. 1984). We cannot say that it is clear that the legislature intended that a person who provides alcohol to an underage person, when the alcohol is a substantial factor in causing injury to a third party, is immune from liability in a suit by that third party solely because that third party, also underage, illegally consumed alcohol. We therefore conclude that the exception in subsec. (4) is applicable and Karen, Ransom and Beattie are not immune under § 125.035, STATS.[11] Unless and until the legislature decides otherwise, issues concerning the negligence of a plaintiff in

---

[11] Although we have concluded that, for purposes of this motion, the conduct of Karen, Ransom and Beattie is negligent per se under § 125.07(1)(a)1, STATS., they are not liable unless their negligence was a substantial factor in causing Rhonda's injuries. That issue has not been raised, and we do not address it.

Rhonda's situation can be addressed in the context of contributory and comparative negligence.

*By the Court.*—Judgment reversed.