Rhonda MILLER, Richard Miller and Kay Miller, Plaintiffs-Appellants,

v.

Craig J. THOMACK, Defendant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant-Co-Appellant,

James D. THOMACK, ABC Insurance Company, as insurer of James Thomack, Michelle Melberg, DEF Insurance Company, as insurer of Michelle Melberg, Defendants,

Kimberly RANSOM, Defendant-Respondent-Petitioner,

FIRE INSURANCE EXCHANGE, Defendant-Petitioner,

Kurt D. PAMPERIN, Sr., Kurt Pamperin, Jr., United Fire & Casualty Company, a foreign corporation, Waupaca County, as agent for the State of Wisconsin, Brian Clary, GHI Insurance, as insurer of Brian Clary, John Doe, Susan Roe, Defendants,

Karen MILLER, Defendant-Respondent-Petitioner,

NOP INSURANCE, as insurer of Karen Miller, Defendant,

Craig J. THOMACK, Third Party Plaintiff-Co-Appellant,

James D. THOMACK, Third Party Plaintiff,

Jason BEATTIE, Third Part Defendant-Respondent,

Lee BEATTIE, Carol Beattie and KLM Insurance Company, as insurer of Jason Beattie, Lee Beattie and Carol Beattie, Third Party Defendants. [Case No. 95–1684]

650

Rhonda MILLER, Richard Miller and Kay Miller, Plaintiffs-Respondents,

v.

Craig J. THOMACK, Defendant-Appellant,

STATE FARM MUTUAL AUTOMOBILE, James D. Thomack, ABC Insurance Company, Michell Melberg, DEF Insurance Company, Kimberly Ransom, Fire Insurance Exchange, Waupaca County, Brian Clary, GHI Insurance Company, John Doe, Susan Roe, Karen Miller, and NOP Insurance Company, Defendants.

Craig J. THOMACK and James D. Thomack, Third Party Plaintiffs,

Kurt D. PAMPERIN, Sr., Kurt Pamperin, Jr. and United Fire & Casualty Company, Defendants-Appellants,

Jason BEATTIE, Lee Beattie, Carol Beattie, and KLM Insurance Company, an insurer of Jason Beattie, Lee Beattie and Carol Beattie, Third Party Defendants.
[Case No. 95–1766]

Supreme Court

*Nos. 95–1684, 95–1766. Oral argument April 30, 1997.—Decided June 13, 1997.*

(Also reported in 563 N.W.2d 891.)

651

For the defendant-respondent-petitioner, Kimberly Ransom & defendant-petitioner, Fire Insurance Exchange, there were briefs by *George F. Savage* and *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay, and oral argument by *George F. Savage.*

For the defendant-respondent-petitioner, Karen Miller, there was a brief by *Chirstopher R. Bandt, William R. Wick* and *Nash, Spindler, Dean & Grimstad*, Manitowoc and oral argument by *Tom Rusboldt.*

For the plaintiffs-appellants, Rhonda Miller, Richard Miller & Kay Miller, there was a brief by *Peter S. Nelson, Robert N. Duimstra* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.*, Appleton and oral argument by *Peter S. Nelson.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals reversing an order of the Circuit

Court for Waupaca County, Philip M. Kirk, Judge.[1] The circuit court granted the motions for summary judgment of Karen Miller, Kimberly Ransom and Jason Beattie[2] and their insurers (hereafter the defendants), holding that they did not violate Wis. Stat. § 125.07(1)(a)1 (1987–88),[3] which provides that "[n]o person may procure for, sell, dispense or give away any alcohol beverages to any underage person. . . ." The court of appeals reversed the judgment of the circuit court, concluding that one who contributes money for the sole purpose of purchasing alcohol beverages knowing that they will be consumed by an underage person is procuring alcohol beverages for the underage person within the meaning of § 125.07(1)(a)1.

¶ 2.  Several issues were presented in petitions for review. The court, however, limited its grant of review to a single issue: whether a person who contributes money for the purpose of purchasing beer knowing that the beer will be consumed by an underage person[4] procures alcohol beverages for the underage person in violation of § 125.07(1)(a)1. We conclude that a person who contributes money with the intent of bringing about the purchase of alcohol beverages for consump-

---

[1] *Miller v. Thomack*, 204 Wis. 2d 242, 555 N.W.2d 130 (Ct. App. 1996).

[2] Mr. Beattie and his insurer did not participate in this review.

[3] All further statutory references are to the 1987–88 volumes, the statutes in effect at the time of the allegedly negligent acts, unless otherwise indicated. The statutory sections at issue, Wis. Stat. §§ 125.07(1)(a)1 and 125.035(2) and (4)(a) and (b), have remained unchanged since the 1987–88 volumes.

[4] The statutory term "underage person" is defined as a person who has not attained the legal drinking age of 21. Wis. Stat. §§ 125.02(8m) and 125.02(20m).

tion by an underage person whom the person knows, or should know, is under the legal drinking age, procures alcohol beverages for the underage person within the meaning of Wis. Stat. §§ 125.07(1)(a)1 and 125.035(4).

## I.

¶ 3.  For purposes of this review on motions for summary judgment, the facts may be simply stated and are undisputed. On the evening of June 12, 1990, Rhonda Miller,[5] the plaintiff, solicited Brian Clary, who had attained the legal drinking age, to buy beer for herself, Craig Thomack and the defendants, all of whom were under the legal drinking age.

¶ 4.  Kimberly Ransom contributed about $5.00 toward the purchase of the beer. The deposition testimony differs with regard to whether Karen Miller contributed money to the purchase of the beer, but for purposes of the summary judgment motion and this review it is conceded that she did. Others also may have contributed money. Brian Clary purchased the beer and placed it on the back seat of the Thomack vehicle.

¶ 5.  The plaintiff and defendants went to a cabin and then to a beach and parking lot area. At the beach, the beer either remained in the back of the car or was placed near or on the car. At both locations, the beer was available to all; no one distributed any of the beer; those who drank beer helped themselves to it.

¶ 6.  In the early morning of June 13, 1990, Craig Thomack, intoxicated from the beer drinking, lost control of the car he was driving. The plaintiff, Thomack's passenger, was seriously injured in the resulting crash.

---

[5] Rhonda Miller, Karen Miller and Kimberly Ransom are cousins.

¶ 7. The plaintiff and her parents brought a negligence action against the defendants, Craig Thomack[6] and others. The defendants moved the court for summary judgment contending, among other grounds, that they could not be found causally negligent for the plaintiff's injury simply for contributing money to the purchase of beer that was later consumed by Craig Thomack, an underage person, whose consumption of the beer was a substantial factor in the plaintiff's injury.

## II.

¶ 8. In reviewing motions for summary judgment an appellate court applies the standards set forth in Wis. Stat. § 802.08(2) (1995–96) in the same manner as the circuit court. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). Summary judgment is properly granted when there is only a question of law at issue and the moving party is entitled to judgment as a matter of law. The court concludes, and the parties agree, that this case presents a question of law, namely the interpretation and application of statutes to undisputed facts. An appellate court determines questions of law independently, benefiting from the analyses of the circuit court and court of appeals.

¶ 9. Whether the complaint in this case can withstand a motion for summary judgment depends on the plaintiff's ability to prove that the defendants violated § 125.07(1)(a)1.[7] If the defendants did not violate

---

[6] Mr. Thomack is a defendant in the action but is not involved in this review.

[7] Section 125.07(1)(a)1 provides as follows:

§ 125.07(1)(a)1, they would be immune from civil liability by virtue of Wis. Stat. § 125.035.[8] Section 125.035(2) provides persons with immunity from civil liability arising out of the act of procuring alcohol beverages for another person. However, § 125.035(4) provides an exception to the immunity statute. Under

**125.07 Underage and intoxicated persons; presence on licensed premises; possession; penalties. (1)** ALCOHOL BEVERAGES; RESTRICTIONS RELATING TO UNDERAGE PERSONS.

(a) *Restrictions.* 1. No person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

It is undisputed that "alcohol beverages" includes beer. *See* Wis. Stat. §§ 125.02(1) and (6).

The court has stated that proof of violation of § 125.07(1) (a)1 is negligence per se. *Paskiet v. Quality State Oil Co., Inc.*, 164 Wis. 2d 800, 809, 476 N.W.2d 871 (1991).

[8] Section 125.035 provides, in relevant part, as follows:

**125.035 Civil liability exemption: furnishing alcohol beverages.**

. . . .

**(2)** A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.

. . . .

**(4)(a)** In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a).

(b) Subsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party.

§ 125.035(4) a person[9] is not immune from civil liability arising out of the act of procuring alcohol beverages for another if the person knew or should have known that the other was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a third person. Therefore, read together, §§ 125.07(1)(a)1 and 125.035(4) allow a complaint to survive a motion for summary judgment when the plaintiff raises genuine issues of fact with regard to the following three elements: (1) the defendant procured alcohol beverages for an underage person in violation of § 125.07(1)(a)1; (2) the defendant knew or should have known that the underage person had not attained the legal drinking age; and (3) the alcohol beverages provided to the underage person were a substantial factor in causing injury to a third party.

¶ 10.   For purposes of this case we need only construe the word procure[10] as it is used in §§ 125.07(1)(a)1 and 125.035(4) because only this first element is raised in this review.[11]

---

[9] A "person" for purposes of § 125.07(1)(a)1 includes both adults and children. *Smith v. Kappell*, 147 Wis. 2d 380, 385–86, 433 N.W.2d 588 (Ct. App. 1988).

[10] The plaintiff makes an abbreviated argument that the defendants' actions also constitute selling. Brief for plaintiff at 10–11. Because we conclude that the defendants' actions constitute procuring we need not address this argument.

[11] Another question may be whether the injured party, the plaintiff here, is a "3rd party" under § 125.035(4)(b). The scope of the term third party is not apparent in the statute. The defendants did not seek review on or fully argue this question.

Accordingly, we decline to address: (1) whether a person who participates in the procuring of alcohol for an underage person may be a third party so as to be able to allege a violation of § 125.07(1)(a); and (2) whether an underage person who con-

## III.

¶ 11. Our task is to construe the word procure. Section 125.07(1)(a)1 provides that "no person may *procure* for, sell, dispense or give away alcohol beverages to any underage person." (Emphasis added.) The immunity statute, § 125.035(4), establishes liability for specified providers; a provider is one who procures alcohol beverages for an underage person in violation of § 125.07(1)(a).

■■■

¶ 12. The statutes do not define the word procure and the legislative history is silent. We construe the statutory language to effectuate the intent of the legislature. One rule of construction is to assume that the legislature intended to use words and phrases according to their ordinary and accepted meanings.

¶ 13. The court of appeals' analysis relied on the dictionary definition of procure to discern the ordinary and accepted meaning of the word and thus the legislative intent. The dictionary definition is as follows:

---

sumes alcohol may be a third party so as to take advantage of the immunity exception of·§ 125.035(4)(b).

In the court of appeals, a party no longer involved in this case argued that *Kwiatkowski v. Capitol Indem. Corp.*, 157 Wis. 2d 768, 774–777, 461 N.W.2d 150 (Ct. App. 1990), bars an underage consumer of alcohol from benefiting from the exception to immunity set out in § 125.035(4)(b). Court of appeals brief for Pamperins at 9–11 and reply brief for Pamperins at 4–6. The court of appeals in deciding the present case construed and withdrew language from *Kwiatkowski* to find the exception to immunity provided by § 125.035(4)(b) applicable in the present case. *Miller*, 204 Wis. 2d at 261–65. *But see Doering v. WEA Ins. Group*, 193 Wis. 2d 118, 142–43, 532 N.W.2d 432 (1995) (discussing *Kwiatkowski*).

1a(1) to get possession of: OBTAIN, ACQUIRE. . .*esp.* to get possession of by particular care or effort. . .and sometimes by devious means. . . . 2a(1) to cause to happen or to be done: bring about: EFFECT. . . .

Webster's Third New International Dictionary 1809 (1961); *Miller v. Thomack,* 204 Wis. 2d 242, 258, 555 N.W.2d 130 (Ct. App. 1996).

¶ 14. The defendants argue that one who merely contributes funds to a pool of money does not fall within the dictionary definition of the word procure. A mere contributor of funds does not, according to the defendants, possess the alcohol, obtain the alcohol, acquire the alcohol or cause to happen, bring about or effect the purchase of alcohol. The defendants urge that contributing money may give an opportunity to another to meet the dictionary definition of procure, but the act of contributing money does not in and of itself constitute procuring. Procure is used in the statutes, the defendants reason, in its common and accepted meaning, to actively participate in causing a particular event to happen, not to contribute money.

¶ 15. To put it another way, the defendants contend that procuring requires an affirmative act of physical possession and transfer of the alcohol itself. According to the defendants, to procure implies to acquire, to exercise possession or control, rather than merely to fund. The defendants urge that the legislature intended § 125.07(1)(a)1 to require additional steps beyond contributing money to constitute procuring alcohol beverages.

¶ 16. The plaintiff's position is that without the defendants' money there would have been no beer. The defendants furnished the money with the intent that beer be acquired for themselves and Thomack, all

underage persons. Had one person purchased the beer personally and provided it to Thomack she would be liable. The plaintiff urges that the defendants' collective purchase of the alcohol beverages and the use of a 21-year-old person as a go-between should not insulate the defendants from liability.

¶ 17. Prior Wisconsin cases defining the word procure in other contexts relied on dictionary definitions similar to that used by the court of appeals in this case. Approving a jury instruction which used the word, the court has stated: "Procure means to obtain by any means; to bring about. It has no different significance in the law. The [trial] court evidently used the word 'procure' as synonymous with 'aid' or 'abet,' and the jury could hardly have understood it otherwise." *Vogel v. State*, 138 Wis. 315, 332, 119 N.W. 190 (1909) ("procuring" a co-defendant to commit an act) (citations omitted). In another case, citing a law dictionary, the court stated that "[t]o 'procure' is 'to initiate,' 'to instigate,' or 'to cause a thing to be done.' " *In re Estate of Kamesar*, 81 Wis. 2d 151, 165, 259 N.W.2d 733 (1977) ("procuring" the drafting of a will as used in a statute) (citation omitted).

¶ 18. No Wisconsin decision has construed or applied the word procure as it is used in § 125.07(1)(a)1.[12]

---

[12] The words sell and give away used in § 125.07(1)(a)1 have been construed to proscribe selling beer to an underage person who gives the beer to another underage person who then causes injury, *Paskiet v. Quality State Oil Co.*, Inc., 164 Wis. 2d 800, 809, 476 N.W.2d 871 (1991) (applying "sell"), and handing beer to an underage person who then causes injury, *Smith v. Kappell*, 147 Wis. 2d 380, 384, 433 N.W.2d 588 (Ct. App. 1988) (applying "give away").

¶ 19.   Courts in a number of other jurisdictions have construed distinct but similar statutory language and generally have concluded that contributing money for the purchase of alcohol beverages consumed by an underage person is not furnishing or providing alcohol beverages to the underage person.

¶ 20.   In *Bennett v. Letterly*, 141 Cal. Rptr. 682, 684 (Cal. Ct. App. 1977), the California Court of Appeal ruled as a matter of law that an underage individual who did nothing more than contribute between $2 and $5 to a common fund intended to be used for the purchase of liquor for consumption by his underage friends, did not violate a statute which made liable "[e]very person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverages to any person under the age of 21 years." The court noted that the defendant neither purchased, exercised control over, nor even handled, the liquor. The word "furnish," as used in the California statute, was held to imply some type of affirmative act beyond contributing money. *Id.*

¶ 21.   A later California decision concluded that a defendant who, in addition to contributing to a common fund for the purchase of beer, directed someone to pick up the beer kegs and then attached the kegs to a dispenser, "sufficiently participated in the stream of beer availability for it to be said he furnished the beer." *Sagadin v. Ripper*, 221 Cal. Rptr. 675, 684 (Cal. Ct. App. 1985). These acts were sufficient to satisfy the requirement of *Bennett* that an affirmative act be taken beyond contributing money.

¶ 22.   The defendants view *Lather v. Berg*, 519 N.E.2d 755 (Ind. Ct. App. 1988), as the most persuasive case supporting their position. In that case, four minors persuaded an adult to buy them liquor with

funds loaned by defendant Bailey. Later, Murphy, one of the minors, drove his car at a high rate of speed while intoxicated, killing a police officer.

¶ 23. The court ruled that "furnishing" money for alcohol is not furnishing alcohol, and because Bailey had neither taken possession of nor exerted control over the liquor itself, his conduct did not constitute furnishing alcohol to a minor in violation of the Indiana statute. *Id.* at 763. The court reasoned: "While we acknowledge that Bailey may have supplied a preliminary link in the chain of events leading to Murphy's ultimate intoxication, we have found no legal basis on which to conclude that he violated the statute." *Id.*

¶ 24. Although the words and structure of these other states' statutes are not identical to the Wisconsin statute, they are similar. Words such as furnish and provide are similar to procure in the Wisconsin statute. Procure, however, distinct from furnish or provide, may encompass a greater range of circumstances.[13] In any event, these cases are not conclusive on the meaning of Wisconsin's statutory language.

¶ 25. The defendants urge us to adopt the "additional affirmative act" requirement as other states have done when the person alleged to be liable contributes funds that are used to purchase alcohol beverages for underage persons. While the additional affirmative act requirement has superficial appeal, we conclude that it is not a workable requirement.

---

[13] Were we to interpret procure as requiring an affirmative act beyond contributing money, such as taking and transferring possession, the word procure would be surplusage because the other statutory words "sell, dispense or give away" encompass the affirmative acts the defendants seek to require. Nothing in the text of the statutes requires an affirmative act in addition to the affirmative act of contributing money.

¶ 26. The additional affirmative act rule becomes arbitrary in application. Claimants and courts will look for minor conduct that can be characterized as the affirmative act in addition to the contribution of money. Under the defendants' interpretation, for example, one who contributes money would be afforded immunity so long as he or she had not touched the beer that an underage person consumed while one who contributes money and carries the beer a few feet might incur liability.

¶ 27. The defendants further caution that the court of appeals' construction of § 125.07(1)(a)1 extends the statute to any person who, by contributing funds, has provided any conceivable link, no matter how remote, in the chain of ultimate consumption by the underage person who causes injury.[14] They pose

---

[14] The defendants argue that in a tort action, even when based on statutes, a court may deny recovery on public policy grounds. In a tort action where there is a complete chain of causation between negligence and damage a court may nevertheless deny recovery on the following public policy grounds:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place an unreasonable burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 540–41, 247 N.W.2d 132 (1976).

The defendants argue that when liability is based solely on contributing money to the purchase of alcohol that is consumed by an underage person, the injury is too remote from the negligence: A small amount of money is contributed; the individual

the following hypothetical: a parent who, when asked by his son for $5.00 to go to the movies, gives him the money despite having a suspicion that the son might use it to buy alcohol beverages. The defendants contend that such a parent would be vulnerable because an issue could be raised whether the parent "should have known" that the money would be used to purchase alcohol.

¶ 28.   We conclude that the parent in the defendants' hypothetical does not come within the statutory definition of procure because we interpret the word procure as requiring, when contributing funds, the intent of bringing about the purchase of alcohol beverages for consumption by an underage person.

¶ 29.   This interpretation is consistent with Wisconsin public policy expressed in the statutes and judicial decisions.[15] The nature and extent of the prob-

contributing the money has no control over the amount or time of consumption or what the underage person who consumes the alcohol will do; and the potential liability is wholly out of proportion to the culpability.

Assuming that the public policy doctrine is applicable in this type of case, we are not persuaded that the act of contributing money and the injury in this case are too remote or that the culpability and liability are so out of proportion that, as a general matter, public policy would be violated.

For a discussion of the public policy rationale previously applied to the common law liability of purveyors of alcohol beverages and for the public policy rationale underlying the statutes, see *Doering*, 193 Wis. 2d at 133–137, 145–48.

[15] In *Sorensen v. Jarvis*, 119 Wis. 2d 627, 350 N.W.2d 108 (1984), and *Koback v. Crook*, 123 Wis. 2d 259, 366 N.W.2d 857 (1985), the court reversed the previous common law rule of non-liability for those who provide alcohol beverages to an underage

lem of underage drinking[16] suggest that the legislature intended to broadly proscribe acts which lead to underage drinking. Thus, we see no indication that the legislature intended to require an affirmative act beyond contributing money. We discern limits, however, in the statutory language.

■

¶ 30.   The statutes, §§ 125.07 and 125.035, limit liability to when alcohol beverages are knowingly pro-

---

person who causes injury while intoxicated. As the court has said "[b]oth these cases and the early legislation they construe informed the legislature's enactment of sec. 125.035." *Doering*, 193 Wis. 2d at 137. Section 125.035(4) provides immunity to those who procure alcohol beverages for adults but imposes liability on those who knowingly procure alcohol beverages for an underage person.

*See also* Wis. Stat. § 125.07(1)(a)3 ("No adult may knowingly permit" consumption of alcohol beverages by underage person on premises controlled by adult); Wis. Stat. §§ 125.07(6) and 125.035(4)(b) (providing defenses to liability when one who procures alcohol beverages does so unwittingly as a result of misrepresentations by underage person).

[16] Alcohol abuse is the leading cause of hospitalization and death of youth (11–25 year olds). Drinking is involved in 55% of all teenage deaths, including 39% of suicides, 40% of "falls," 43% of drownings, 43% of automobile crashes, and 75% of all fatal drug overdoses. . . .Alcohol *is* Wisconsin's drug problem. . . .This is reflected in our children, whose pattern of abusive drinking significantly exceeds the national average.

State of Wisconsin, Department of Justice, Office of Transportation Safety, *Report and Recommendations of the Task Force on Underage Violator Programs in Wisconsin*, 1 (1995). *See also* Legislative Reference Bureau Brief 95–3, *The Minimum Drinking Age in Wisconsin* (1995) (discussing the history of efforts to control underage drinking and the nature of the problem).

vided to underage persons.[17] *See Doering v. WEA Ins. Group*, 193 Wis. 2d 118, 138–144, 532 N.W.2d 432 (1995). In enacting § 125.07(1)(a)1 and § 125.035(4) the legislature was evidently concerned with deterring dangerous behavior by placing liability on only those who are culpable, that is, those who know or should have known the person was underage.

¶ 31. Reading procure as requiring intent that the funds contributed be used for purchase of alcohol beverages for consumption by underage persons limits the range of persons who may be liable to those who are culpable. Therefore, when one contributes money with the intent of bringing about the purchase of alcohol beverages for consumption by an underage person, one acts in a manner that this statute seeks to proscribe.

¶ 32. Accordingly, we conclude that a person who contributes money with the intent of bringing about the purchase of alcohol beverages for consumption by an underage person whom the person knows, or should know, is under the legal drinking age, procures alcohol beverages for the underage person under the statutes. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[17] As noted at the outset, § 125.035(4)(b) expressly contains a state of mind element: liability only attaches when a person who procured alcohol beverages knew or should have known that the underage person was under the legal drinking age. Our conclusion does not affect this element but adds another to the prior determination of whether the person procured alcohol beverages for an underage person.