Ricky D. STEPHENSON, Individually and as Personal Representative for the Estate of Kathy M. Stephenson, Plaintiff-Respondent,

v.

UNIVERSAL METRICS, INCORPORATED, American Family Mutual Insurance Company and Ohio Casualty Insurance Company, West American Insurance Company, Defendants,

John H. KREUSER and Sentry Insurance, a mutual insurance, Defendants-Appellants.†

Court of Appeals

*No. 00–1397. Submitted on briefs April 4, 2001.—Decided May 15, 2001.*

**2001 WI App 128**

(Also reported in 630 N.W.2d 767.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Patrick S. Nolan* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael L. Bertling* of *McLario, Helm & Bertling, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. John H. Kreuser and his insurer, Sentry Insurance (collectively, "Kreuser") appeal from the nonfinal circuit court order denying

their motion for summary judgment.[1] Kreuser argues that the court erred in concluding that WIS. STAT. § 125.035(2) (1997–98),[2] which he characterizes as "Wisconsin's Liquor Liability Immunity Statute," did not immunize him from liability for his alleged conduct in failing to drive another adult home after stating that he would do so.

¶ 2.  We conclude that the circuit court correctly determined that Kreuser's alleged conduct fell outside the parameters of the immunity granted under WIS. STAT. § 125.035(2). We further conclude that Kreuser's alleged conduct is encompassed by the standards declared in RESTATEMENT (SECOND) OF TORTS § 324A (1965), adopted by the Wisconsin Supreme Court and most recently reiterated in *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906. Accordingly, we affirm.

## I.  BACKGROUND

¶ 3.  According to the amended complaint, on December 4, 1998, Kreuser was attending a "meeting" at the Silver Spring Country Club; the meeting was held by his employer, Universal Metrics, Inc., to "further the business interests of UMI by way of creating good will between it and it's [sic] employees, and for purposes of increasing employee morale." Among the other Universal employees at the meeting was Michael T. Devine, who became intoxicated. Kreuser assured Silver Spring personnel that he would drive Devine

---

[1] In an order dated August 8, 2000, we granted leave to appeal from the May 9, 2000 nonfinal order, but specified that interlocutory review would encompass only the circuit court's denial of the petitioners' motion for summary judgment.

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

home. Kreuser, however, failed to do·so. Devine, driving away from the country club, crossed the center line on Silver Spring Road and struck a motor vehicle driven by Kathy Stephenson. Both Devine and Stephenson died as a result of the collision.

¶ 4.   Marge Kubowski, a Silver Spring bartender, testified at the inquest into the deaths of Stephenson and Devine. Her testimony, included in the summary judgment submissions, told of Kreuser's assurance that he would drive Devine home:

> A:  . . . People just were making different comments about [Devine]. And at one point he came up to the bar and ordered a beer, and that is when I noticed that he had [had] too much to drink and I couldn't serve him.
>
> Q:  . . . Do you recall at that point expressing concern that he should not drive, or he should get a ride?
>
> A:  That's correct.
>
> Q:  How did you express, did you verbalize that?
>
> A:  Yes, I did, more than once.
>
> Q:  And did you get any response from anybody?
>
> A:  Yes, I did.
>
> Q:  From who[m]?
>
> A:  A guy [Kreuser] that was standing by the bar that was standing next to this particular guy [Devine] that was not getting anything else to drink.
>
> Q:  What kind of response did you receive?
>
> A:  He acted like I was kidding at first, you know. He kind of chuckled back. And I said, "I'm being very serious. This man needs a ride home. He can-

not leave this country club in this condition." And he said, "Don't worry, I'll give him a ride." And I said, "Are you sure?" And he said, "I promise I'll give him a ride home."

Kreuser, however, remembered it differently. At his deposition, he testified:

Q: Okay. After hearing the bartender ask Mike D[e]vine whether he had a ride home, what did you do?

A: I had just turned to see what was going on, more or less, and Mike had made a motion like I was it.

Q: All right. And he made a motion with his head?

A: Yes.

Q: So you interpreted his motion to be a signal to the bartender to you that you were his ride home?

A: Uh-huh.

Q: Is that a yes?

A: Yes.

Q: So you saw him do that?

A: Yes.

Q: And she was looking at him when—the bartender was looking at him when he did that?

A: Yes.

Q: And what did you do in response to that?

A: I just nodded my head.

Q: To who?

A: To the bartender.

Q:  And by nodding your head you were indicating to the bartender that you were going to give him a ride home, correct?

A:  Yes.

Irrespective of which version is correct (and we, of course, may not find facts, *see Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980) (court of appeals is precluded from making factual determinations when evidence is controverted)), the upshot of both versions is that Kreuser voluntarily agreed to drive Devine *home*.[3]

---

[3] Kreuser's brief-in-chief to this court, without providing any record reference, states: "Kreuser said nothing, but simply nodded his head once affirmatively." Further, neither of Kreuser's briefs on appeal referred us to Kubowski's inquest testimony, in which she stated that Kreuser did more than merely "nod" his assent to assuming the burden of driving Devine home.

Under our view of the Rules of Professional Conduct for Attorneys, a lawyer has a duty to disclose important information to an appellate tribunal even though it may be adverse to his or her client's position. *See* SCR 20:3.3(a)(3) (2000) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."). And, of course, lawyers may not knowingly make any misrepresentation to a tribunal. *See* SCR 20:3.3 (a)(1) (2000) (forbidding counsel from knowingly "mak[ing] a false statement of fact or law to a tribunal").

Here, we recognize that Kreuser's counsel's representations were ones of fact, not law, and that the countervailing factual version subsequently was presented by Stephenson's counsel in respondent's appellate brief. We also accept that Kreuser's counsel accurately related Kreuser's version of what took place. An acknowledgment of Kubowski's version, however, would have been appropriate under the rules of appellate

¶ 5. Kathy Stephenson's husband, individually and as the personal representative of her estate, brought an action against several defendants including Universal, Kreuser, their insurers, and the insurer providing both liability coverage to Devine and under-insured motorist coverage to Kathy Stephenson. The circuit court granted summary judgment to Universal and its insurer, West American, concluding that, pursuant to *Greene v. Farnsworth*, 188 Wis. 2d 365, 525 N.W.2d 107 (Ct. App. 1994), under WIS. STAT. § 125.035(2), they were immune from liability. The court also concluded, however, that under *Gritzner v. Michael R.*, 228 Wis. 2d 541, 598 N.W.2d 282 (Ct. App. 1999),[4] Kreuser was not immune.

## II. DISCUSSION

¶ 6. As this court has explained:

"Summary judgment is appropriate to determine whether there are any disputed factual issues for trial and 'to avoid trials where there is nothing to try.' " While we apply the same methodology as the

---

procedure. See WIS. STAT. RULE 809.19(1)(d) (appellant's brief must contain a statement of the case, which is required to include "a description of the nature of the case; the procedural status of the case leading up to the appeal; the disposition in the trial court; and *a statement of facts relevant to the issues presented for review*, with appropriate references to the record"). (Emphasis added.) We also remind counsel that the rules require a record reference for each statement of fact presented in a brief. *See id.*

[4] At the time of the circuit court decision, the supreme court had not decided *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906, affirming, in part, this court's decision in *Gritzner v. Michael R.*, 228 Wis. 2d 541, 598 N.W.2d 282 (Ct. App. 1999).

trial court when reviewing summary judgment, we owe no deference to the conclusion of the trial court. We first examine the pleadings to determine whether they state a claim for relief. If the pleadings state a claim and the responsive pleadings join the issue, we then must examine the evidentiary record to analyze whether a genuine issue of material fact exists or whether either party is entitled to a judgment as a matter of law.

*Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 436–37, 531 N.W.2d 606 (Ct. App. 1995) (citations omitted).

¶ 7. The Wisconsin Supreme Court has adopted the negligence standards articulated in RESTATEMENT (SECOND) OF TORTS § 324A (1965), "Liability to Third Person for Negligent Performance of Undertaking." *Am. Mut. Liab. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 48 Wis. 2d 305, 313, 179 N.W.2d 864 (1970); *Gritzner*, 2000 WI 68 at ¶ 56. The Restatement provides:

> *One who undertakes, gratuitously* or for consideration, *to render services to another which he should recognize as necessary for the protection of a third person* or his things, *is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform]*[5]*his undertaking, if*
>
> (a) *his failure to exercise reasonable care increases the risk of such harm,* or

[5] "The use of the word 'protect' in the introductory portion [of RESTATEMENT (SECOND) OF TORTS § 324A] apparently was a typographical error published in the Restatement and should read 'perform.'" *Miller v. Bristol-Myers Co.*, 168 Wis. 2d 863, 883 n.7, 485 N.W.2d 31 (1992).

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965) (emphases and footnote added.)

¶ 8. Kreuser does not dispute that, at least in theory, the words of the Restatement could encompass the allegations against him. After all, as he must concede, the amended complaint alleges that he "voluntarily assumed a duty" to render services to Devine under circumstances in which he knew or should have known that any failure to perform those services would create "an unreasonable risk of harm" to Devine and others. Kreuser argues, however, that "the liability of an adult charged with the care of a minor," considered in *Gritzner*, cannot "be equated to the liability of an employee for another's actions at an employer-sponsored Christmas party." Further, Kreuser argues, any liability he otherwise might have for failing to drive Devine home is precluded by the immunity granted under WIS. STAT. § 125.035(2). We disagree.

¶ 9. First, although *Gritzner* did involve questions of an adult's liability for his alleged negligent failure to warn others of a ten-year-old child's "propensity to engage in inappropriate sexual acts" with other children, and for his alleged negligent failure to control the child's conduct, *Gritzner*, 2000 WI 68 at ¶¶ 2, 7, the supreme court's discussion of the Restatement's "Liability to Third Person for Negligent Performance of Undertaking" is not limited to those facts. *Id.* at ¶ 56. Indeed, the supreme court emphasized that the Restatement's "standard of conduct applies to *anyone* 'who, having no duty to act, gratuitously undertakes to

act and does so negligently.' " *Id.* (emphasis added) (quoting *Am. Mut. Liab. Ins. Co.*, 48 Wis. 2d at 313, a case involving whether a boiler insurer had negligently performed boiler inspections). Thus, we conclude, the Restatement's standards do apply to Kreuser's liability to third persons for his alleged negligent failure to perform the undertaking he promised to render.

¶ 10. Second, we read nothing in WIS. STAT. § 125.035(2) to immunize Kreuser from his potential liability for negligent failure to perform the undertaking he allegedly promised.

¶ 11. The interpretation of WIS. STAT. § 125.035(2) presents a question of law, which we review *de novo. Greene*, 188 Wis. 2d at 370. WISCONSIN STAT. § 125.035(2) provides: "A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person." The statute is clear. As we explained, it "clearly and unambiguously immunizes persons from civil liability in circumstances . . . where one adult furnishes another with alcohol." *Greene*, 188 Wis. 2d at 370. Here, Kreuser is not alleged to have furnished Devine with alcohol. Kreuser's liability does not rest on any allegation that he was, in the words of the statute, "procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to [Devine]." *See* WIS. STAT. § 125.035(2).

¶ 12. Kreuser contends, however, that if "procuring," under WIS. STAT. § 125.035(2), does not encompass his alleged conduct, an unreasonable result is inevitable. He points out that bartenders and even drinking companions who encourage a person to get drunk and drive could be immune, *see Greene*, 188 Wis. 2d at 370–72, but a designated driver who fails to fulfill his responsibility could be liable. Thus, he maintains,

459

rejection of his position "may utterly destroy budding designated driver programs in this state, because designated drivers may fear liability for inadequately performing or failing to perform their voluntary duty."

¶ 13.   We acknowledge that Kreuser may have identified a potentially ironic result flowing from the interplay of WIS. STAT. § 125.035(2) and the legal principles recognized by the Restatement. We must not, however, expand the statute beyond its clear and unambiguous scope as intended by the legislature which, we presume, was fully familiar with the well-established and long-standing principle that those who voluntarily assume a duty are liable if they breach that duty.

¶ 14.   We see nothing in WIS. STAT. § 125.035(2) that would trump the applicability of the Restatement here and thus remove from the Restatement's reach those who clearly fall within its scope. And, absent a legislative pronouncement requiring us to do so, we certainly will not relieve designated drivers, and others who volunteer to drive intoxicated individuals home, of liability for their failure to fulfill responsibilities they have assumed voluntarily.

*By the Court.*—Order affirmed.