Ricky D. STEPHENSON, Individually and as Personal Representative for the Estate of Kathy M. Stephenson, Plaintiff-Respondent,

v.

UNIVERSAL METRICS, INCORPORATED, American Family Mutual Insurance Company and West American Insurance Company, Defendants,

John H. KREUSER and Sentry Insurance, A Mutual Company, Defendants-Appellants-Petitioners.

Supreme Court

*No. 00–1397. Oral argument December 3, 2001.—Decided March 28, 2002.*

2002 WI 30

(Also reported in 641 N.W.2d 158.)

173

175

178

For the defendants-appellants-petitioners there were briefs by *James M. Fredericks* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *James M. Fredericks.*

For the plaintiff-respondent there was a brief by *Michael L. Bertling* and *McLario, Helm & Bertling, S.C.,* Menomonee Falls, and oral argument by *Michael L. Bertling.*

¶ 1. JON P. WILCOX, J. This case is a review of a published opinion of the court of appeals, *Stephenson v. Universal Metrics*, 2001 WI App 128, 246 Wis. 2d 450, 630 N.W.2d 767, which affirmed an order of the Milwaukee County Circuit Court, Victor Manian, Judge. The court of appeals held that when an individual indicates to a bartender that he will drive an intoxicated person home, thereby allowing the bartender to serve the intoxicated person more alcohol, that individual assumes a legal duty to drive the intoxicated person home. The court of appeals held that, pursuant to the duty, when the individual who agrees to drive subsequently does not drive the intoxicated person home, that individual can be held liable for any injury or damage caused by the intoxicated person's driving. The court of appeals also held that immunity under Wis. Stat. § 125.035 (1997–98)[1] does not apply in such a case.

¶ 2. In this case, Ricky Stephenson, individually and on behalf of the estate of his wife, Kathy Stephenson, (hereinafter referred to collectively as "Stephenson") brought suit against Universal Metrics, Inc., ("UMI") and against John Kreuser for wrongfully causing Kathy's death. Kathy was killed in an automobile collision with Michael Devine, who was intoxicated at the time of the crash. Earlier in the evening, Kreuser had indicated to a bartender that he would drive Devine home from a UMI employee party. Based on that assurance, the bartender provided more alcohol to Devine. Kreuser later decided not to drive Devine home.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

¶ 3. Kreuser filed a motion to dismiss the complaint against him, arguing that he could not be held liable for the injuries caused by Devine's drunk driving. The circuit court denied Kreuser's motion and, on appeal, the court of appeals upheld the circuit court's ruling. Kreuser then petitioned this court for review, which we granted. We now reverse the court of appeals' decision and hold that Stephenson's claim against Kreuser should have been dismissed.

I

¶ 4. On the evening of December 4, 1998, UMI sponsored a social gathering for its employees at the Silver Spring Country Club ("the Country Club") in Menomonee Falls. The gathering included dinner, an awards presentation, and cocktails. Michael Devine and John Kreuser were both employees of UMI, and both attended the party. Devine and Kreuser drove separately to the event.

¶ 5. UMI provided each attendee with two vouchers, which were each redeemable for either an alcoholic or a non-alcoholic beverage. Once the vouchers were used, additional beverages had to be purchased individually by the attendee. The Country Club provided a bartender who served the beverages.

¶ 6. At about 8:30 that evening, Kreuser and his wife were talking with another couple at the bar when Kreuser overheard the bartender ask Devine if he had a ride home. When Kreuser turned to look, he saw Devine make a motion with his head, suggesting that Kreuser would be responsible for driving Devine home. Kreuser indicated to the bartender that he would, in fact, give

Devine a ride home.[2] Once Kreuser agreed that he would drive Devine home, the bartender served Devine

[2] The parties disagree over the precise manner in which Kreuser expressed his agreement. In his deposition, Kreuser testified that he merely nodded his head to the bartender:

Q: Okay. After hearing the bartender ask Mike Devine whether he had a ride home, what did you do?

A: I had just turned to see what was going on, more or less, and Mike had made a motion like I was it.

Q: All right. And he made a motion with his head?

A: Yes.

Q: So you interpreted his motion to be a signal to the bartender to you that you were his ride home?

A: Uh-huh.

. . .

Q: And . . . the bartender was looking at him when he did that?

A: Yes.

Q: And what did you do in response to that?

A: I just nodded my head.

Q: To who?

A: To the bartender.

Q: And by nodding your head you were indicating to the bartender that you were going to give him a ride home, correct?

A: Yes.

However, the bartender, Marge Kubowski, remembered having a short conversation with Kreuser. At a criminal inquest into the deaths of Devine and Stephenson conducted by the Waukesha County District Attorney, Kubowski testified:

A: . . . [A]t one point [Devine] came up to the bar and ordered a beer, and that is when I noticed that he had too much to drink and I couldn't serve him.

182

several more drinks. Kreuser saw Devine take the drinks back to the table where Devine had eaten dinner.

¶ 7. Between 9:00 and 9:15 p.m., Kreuser saw Devine again. Kreuser was chatting with several people when Devine approached him. Devine told Kreuser that the bartender had cut him off. Devine then asked Kreuser to buy him a drink. In his deposition, Kreuser stated that it was evident at that time that Devine had been drinking, but Devine was not intoxicated to the point where he was stumbling or slurring his speech.

> Q: . . . Do you recall at that point expressing concern that he should not drive, or he should get a ride?
>
> A: That's correct.
>
> Q: How did you express, did you verbalize that?
>
> A: Yes, I did, more than once.
>
> Q: And did you get any response from anybody?
>
> A: Yes, I did.
>
> Q: From who?
>
> A: A guy [Kreuser] that was standing by the bar that was standing next to this particular guy [Devine] that was not getting anything else to drink.
>
> Q: What kind of response did you receive?
>
> A: He acted like I was kidding at first, you know. He kind of chuckled back. And I said, "I'm being very serious. This man needs a ride home. He cannot leave this country club in this condition." And he said, "Don't worry, I'll give him a ride." And I said, "Are you sure?" And he said, "I promise I'll give him a ride home."

Despite this factual disagreement, Kreuser concedes that at that point in time, he had agreed to drive Devine home. For the purposes of our review, we are only concerned with the agreement; the actual manner in which Kreuser communicated his agreement is immaterial.

Kreuser declined to buy Devine a drink and Devine did not persist. This was the last time Kreuser talked to Devine that evening and Kreuser does not remember seeing Devine at the party after that.

¶ 8. Kreuser and his wife left the party at about 10:00 that evening. As they were leaving, Kreuser decided not to give Devine a ride home.[3] Kreuser did not attempt to locate Devine, and he failed to tell Devine or anyone else that he did not intend to give Devine a ride home. There is no evidence, however, that shows whether Devine left the party before or after Kreuser.

---

[3] In his deposition, Kreuser acknowledged that he made a conscious choice not to drive Devine home:

Q: At some point that evening you decided not to give him a ride home, correct?

A: Yes.

Q: And I understand from reading testimony at the inquest that basically your wife felt it was somebody else's turn; is that an accurate statement?

A: Yes.

Q: And that was based upon the fact that you had done it twice before and she was involved in that twice before?

A: Exactly.

. . .

Q: When did you decide not to give him a ride home?

A: I believe when we left.

. . .

Q: Did you look for [Devine] anywhere at that point to communicate that to him?

A: No.

¶ 9. At approximately 10:40 p.m., Devine was driving his own vehicle when he crossed the centerline of the highway and struck another vehicle, which was driven by Kathy Stephenson. Both Devine and Kathy Stephenson died as a result of injuries they suffered in the collision. The State Crime Laboratory measured Devine's blood alcohol concentration at 0.338 g/dl—a level considerably over Wisconsin's legal limit. *See* Wis. Stat. §§ 340.01(46m), 346.63(1)(b).

¶ 10. Ricky Stephenson, on his own behalf and as the representative for Kathy's estate, brought suit against UMI, UMI's insurers (West American Insurance and American Family Mutual Insurance), Kreuser, and Kreuser's insurer (Sentry Insurance). Stephenson alleged several causes of action, including that UMI had failed to control Devine's conduct, that UMI had failed to properly supervise Devine, that UMI had voluntarily assumed a duty to see that Devine had a safe way to get home, and that Kreuser had voluntarily assumed a duty to drive Devine home.

¶ 11. Both UMI and Kreuser moved for summary judgment. The circuit court granted summary judgment to UMI and its insurers, holding that under Wis. Stat. § 125.035 and *Greene v. Farnsworth,* 188 Wis. 2d 365, 525 N.W.2d 107 (Ct. App. 1994), UMI was immune from liability. The circuit court denied Kreuser's motion, however. Applying the framework of Restatement (Second) of Torts § 324A (1965) laid out by the court of appeals in *Gritzner v. Michael R.,* 228 Wis. 2d 541, 598 N.W.2d 282 (Ct. App. 1999),[4] the circuit court held that Kreuser could be held liable for Devine's actions.

[4] Not long after the circuit court's ruling, this court affirmed, in relevant part, the court of appeals' decision in *Gritzner. Gritzner v. Michael R.,* 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906.

¶ 12. Stephenson and Kreuser both appealed, and the court of appeals bifurcated the issues. In one appeal (not at issue in the present case) the court of appeals held that the circuit court properly dismissed Stephenson's claims against UMI. *Stephenson v. Universal Metrics,* 2001 WI App 173, 247 Wis. 2d 349, 633 N.W.2d 707. In that same case, the court of appeals found that there was a question of fact regarding whether Kreuser had acted within the scope of his employment, and reversed the circuit court's grant of summary judgment on that issue. *Id.* at ¶ 17.

¶ 13. In the appeal at issue in the present case, the court of appeals held that, pursuant to this court's decision in *Gritzner v. Michael R.,* 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906, Kreuser had assumed a legal duty to drive Devine home and could therefore be held liable for injuries proximately caused by Devine. The court of appeals also held that Kreuser was not immune from liability under § 125.035.

¶ 14. On review of that issue, we reverse the holding of the court of appeals. Although we agree that this case fits the framework of Restatement (Second) of Torts § 324A, we hold that under the facts of this case, Kreuser's liability is precluded both by § 125.035 and by public policy. We therefore hold that Kreuser's motion for summary judgment should have been granted.

II

¶ 15. We begin by examining the question of Kreuser's duty. In any negligence claim, the first element that must be proven by the plaintiff is that some duty of care existed on the part of the defendant.

*Gritzner,* 2000 WI 68, ¶¶ 19–20 (citing *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998); *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995)). Whether such a duty exists is a question of law, which this court reviews de novo. *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976).

¶ 16. In determining whether a duty exists, Wisconsin follows the approach of the dissent in the well-known *Palsgraf* decision. *Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99 (N.Y. 1928); *see also Schilling v. Stockel,* 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965); *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 182, 77 N.W.2d 397 (1956). Under that approach, every person owes a duty to the world at large to refrain from conduct that could cause foreseeable harm to others, even though the identity of the person harmed has not been established at the time of the conduct. *Rockweit,* 197 Wis. 2d at 419–20. A person is negligent when he or she fails to exercise "ordinary care"—the amount of care which a reasonable person would use under similar circumstances. *Gritzner,* 2000 WI 68, ¶ 22 (citing Wis JI-Civil 1005); *Osborne v. Montgomery,* 203 Wis. 223, 231, 234 N.W. 372 (1931). Thus, when determining the existence of a duty, the primary question we ask is not whether the defendant has a duty to take (or refrain from) certain actions, but whether the defendant's actions (or lack thereof) were consistent with the general duty to exercise a reasonable degree of care under the circumstances. *Gritzner,* 2000 WI 68, ¶ 25.

¶ 17. It is against this backdrop that we must decide whether Kreuser had a duty to drive Devine home. Specifically at issue is whether the framework of

Restatement (Second) of Torts § 324A should be used to determine if liability exists. Section 324A states, in relevant part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1967).

¶ 18. In support of using the rule in § 324A, Stephenson relies heavily on this court's holding in *Gritzner*. In that case, this court applied the framework of Restatement (Second) of Torts § 324A to a situation where an adult agreed to watch another person's child. In *Gritzner*, we held that defendant Roger Bubner could be held liable when his girlfriend's son, ten-year-old Michael R., sexually assaulted four-year-old Tara G. Bubner had voluntarily agreed to watch Tara and then left Tara alone and unsupervised with Michael. *Gritzner*, 2000 WI 68, ¶ 57. At the time, Bubner knew that Michael had previously engaged in inappropriate sexual behavior with other children, including Michael's own half-sister. We held that a reasonable jury could have found that Bubner failed to exercise reasonable care, and that such a failure increased the risk of

188

physical harm to Tara. Under these circumstances, we held that Bubner could be liable for failing to control Michael. *Id.*

¶ 19. Stephenson argues that the facts of the present case are analogous to those in *Gritzner.* We agree, and we conclude that the facts of this case fit the § 324A framework. In the present case, Kreuser gratuitously undertook to drive Devine home, which Kreuser recognized as necessary for the protection of other persons or property. When Kreuser decided not to drive Devine home, a reasonable jury could have found that Kreuser failed to exercise reasonable care, and that such a failure increased the risk of harm to other persons and property. *See* Restatement (Second) of Torts § 324A.

¶ 20. Kreuser argues that the comparison to *Gritzner* is inappropriate because *Gritzner* was principally an *in loco parentis* case, which primarily involved the obligations of an adult entrusted with the care of a minor child. We disagree with that characterization. A plain reading of *Gritzner* shows that we explicitly recognized that *either* the doctrine of *in loco parentis* or the rule of Restatement (Second) of Torts § 324A could be used to find Bubner liable for failing to control Michael. *Gritzner,* 2000 WI 68, ¶¶ 71–72. The fact that this court used the *in loco parentis* doctrine does not lessen the fact that we also found the § 324A framework appropriate.

¶ 21. Kreuser also argues that the circuit court and the court of appeals ignored the fact that Wisconsin has expressly chosen not to adopt the framework of Restatement (Second) of Torts §§ 314–324. *See Dixson v. Wis. Health Org. Ins. Corp.,* 2000 WI 95, ¶ 42, 237 Wis. 2d 149, 612 N.W.2d 721 (Abrahamson, C.J., dissenting); *Gritzner,* 2000 WI 68, ¶ 22; *Schuster v. Altenberg,*

144 Wis. 2d 223, 238 & n.3, 424 N.W.2d 159 (1988). Kreuser contends that in this case, the lower courts went against Wisconsin's longstanding negligence principles by finding a duty pursuant to a "special relationship" between Kreuser and Devine where none should have existed. *Schuster,* 144 Wis. 2d at 238 n.3.

¶ 22. Although Kreuser is correct that we have not expressly adopted the Restatement formulation for the voluntary assumption of duty, Kreuser fails to note that in the same sentence in *Dixson,* we have stated that at times we have found it appropriate to consider and rely on some of those same Restatement provisions in our analysis. *Dixson,* 2000 WI 95, ¶ 21. Most notably, we have applied the framework of Restatement § 324A a number of times. *See, e.g., Gritzner,* 2000 WI 68, ¶¶ 55–57; *Am. Mut. Liab. Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 48 Wis. 2d 305, 313–14, 179 N.W.2d 864 (1970); *see also Wulf v. Rebbun,* 25 Wis. 2d 499, 503–04, 131 N.W.2d 303 (1964).

¶ 23. As this court has applied it, the framework of § 324A comports with Wisconsin's principles of negligence law. The basic principle of duty in Wisconsin is that a duty exists when a person fails to exercise reasonable care—when it is foreseeable that a person's act or omission may cause harm to someone. *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974). As we pointed out in *Wulf v. Rebbun,* however, "[A]lthough one may have no duty to perform an act, if he attempts to do something to another even although gratuitously he must exercise reasonable care." *Wulf,* 25 Wis. 2d at 503. That is, liability may be imposed on a person who has no duty to act when that person gratuitously undertakes to act, then acts negligently. *Am. Mut. Liab. Ins.,* 48 Wis. 2d at 314.

¶ 24. Using the § 324A framework in *Gritzner*, we held that a reasonable jury could have found that Bubner's agreement to watch Tara and his subsequent failure to do so combined to demonstrate a failure to exercise reasonable care. Likewise, under the circumstances of the present case, Kreuser's agreement to drive Devine home, coupled with Kreuser's later decision not to drive Devine home, could be viewed as a failure to exercise reasonable care under the circumstances. Thus, we hold that the circumstances of this case do comport with the § 324A structure.

## III

¶ 25. Despite our holding that the framework of § 324A is appropriate, we are convinced that the defenses raised by Kreuser are also applicable. Kreuser raises two defenses to the imposition of liability in this case. First, Kreuser argues that Wis. Stat. § 125.035 immunizes him from liability because he procured alcohol for Devine. Second, Kreuser argues that public policy should preclude liability in these circumstances. Under the specific facts of this case, we find both arguments persuasive. We address each argument in turn.

## A

¶ 26. We focus first on the question of whether Kreuser is immune from suit under Wis. Stat. § 125.035. This is a question of statutory interpretation, which we review de novo. *State ex rel. Hensley v. Endicott*, 2001 WI 105, ¶ 6, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 27. Our ultimate goal in interpreting a statute is to give effect to the intent of the legislature. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis.2d 627, 641, 586 N.W.2d 863 (1998). To determine the intent of the legislature, we first look at the statute's plain text. *Id.* Here, § 125.035(2) provides that:

> A person is immune from civil liability arising out of the act of procuring alcohol beverages for or selling, dispensing or giving away alcohol beverages to another person.

¶ 28. This section of the statute describes two general activities that immunize a person from civil liability: the "procurement" of alcohol for another, and the "selling, dispensing or giving away" of alcohol to another. We think it is clear that Kreuser did not "sell, dispense or give away" alcohol to Devine. However, Kreuser's purposeful action did allow the bartender to serve Devine more alcohol. This makes the issue of whether or not Kreuser "procured" alcohol for Devine a closer question, and we concentrate our analysis there.

¶ 29. This court has had the opportunity to interpret the term "procure" in the past. In *Miller v. Thomack*, 210 Wis. 2d 650, 661, 563 N.W.2d 891 (1997), we construed the term "procure" as it relates to § 125.035(4), an exception to the immunity statute at issue in the present case. This subsection permits civil suits against those who procure alcohol for minors, and those who sell, dispense, or give alcohol to minors.

¶ 30. In *Miller*, we noted that the statutes and legislative history were silent regarding the definition of "procure." *Id.* Therefore, we looked to the word's common definition for guidance. *Id.* at 661–62. Under one dictionary definition, we found that to "procure" did

not mean merely to "give" or to "provide something." Rather, "procure" was defined as to "cause to happen or to be done," to "bring about" or to "effect." *Id.* at 662 (quoting *Webster's Third New International Dictionary* 1809 (1961)). We noted that this definition necessarily encompassed a wider variety of activities than merely giving or providing.

¶ 31. We also looked at how the word "procure" has been used by courts in other jurisdictions and by Wisconsin courts in other contexts. *Id.* at 662–65. For instance, in one Wisconsin jury instruction discussing criminal liability of a party to a crime, we noted that " '[p]rocure means to obtain by any means; to bring about . . . .' " *Id.* at 663 (citing *Vogel v. State,* 138 Wis. 315, 332, 119 N.W. 190 (1909)). Regarding the drafting and execution of a will, we held that " ' "procure" is "to initiate," "to instigate," or "to cause a thing to be done." ' " *Id.* (citing *In re Estate of Kamesar,* 81 Wis. 2d 151, 165, 259 N.W.2d 733 (1977)). We also noted that other jurisdictions had adopted similar definitions. *Id.* at 664. We came to the conclusion that although words such as "furnish" and "provide" are similar to "procure," the term "procure" encompasses a greater range of actions. *Id.* at 665.

¶ 32. Our decision was reinforced by the language of § 125.035(4)(a), where the legislature listed "procure" separately from "sell, dispense or give away." *Id.* at 665 n.13. We noted that the term "procure" would be extraneous if it merely meant the same as "sell, dispense or give away." Wis. Stat. § 125.035(4)(a); *Miller,* 210 Wis. 2d at 665 n.13. Since we presume that the legislature does not add extraneous language to a statute, we must also presume that the term "procure" has a different meaning than the other terms listed in the statute.

¶ 33. In *Miller*, we went on to hold that even if a person only contributes money, but does so with the intent of bringing about the purchase of alcohol, that person is "procuring" alcohol under the meaning of § 125.035(4). *Id.* at 667. We emphasized that the mental state of the procurer was important. By requiring that the procurer intend that the funds be used to purchase alcohol, liability can be closely limited to those whom the legislature intended to be culpable. *Id.* at 669. In keeping with the legislative intent of § 125.035(4) to broadly proscribe acts that lead to underage drinking, we also held that no further affirmative act beyond contributing money was required. *Id.* at 667–68.

¶ 34. The court of appeals took a similarly broad view of procurement in *Greene v. Farnsworth*, 188 Wis. 2d 365. In that case, the court ruled that § 125.035(2) provided the defendants immunity from a civil conspiracy action when the defendants "encouraged, advised, and assisted" the tortfeasor to drink alcohol. *Id.* at 370. In particular, the court of appeals noted that (1) the text of the statute immunizes persons from civil liability for acts arising out of the procurement of alcohol; and (2) that allowing a conspiracy action in a drunk driving case creates "an exception so great that it would swallow the nonliability rule," and could even create liability for taverns, social hosts, and drinking companions. *Id.* at 372. The legislature clearly did not intend so great an exception, given its pronouncement in § 125.035(2), and the court of appeals concluded that imposing liability under such circumstances was more appropriately left to the legislature. *Id.* at 372–73.

¶ 35. Turning back to the present case, we think that the basic principles of *Miller* and *Greene* are applicable. First, the language in § 125.035(2), like the

language in § 125.035(4)(a), lists "procuring" separately from "selling, dispensing or giving away" alcohol. As we noted in *Miller* about subsection (4), the inclusion of "procure" in subsection (2) would be extraneous if it merely meant the same thing as "sell, dispense or give away." Wis. Stat. § 125.035(2). This leads us to the conclusion that "procure" has a different meaning than the other terms listed.

¶ 36. Furthermore, we think that the dictionary definition we adopted in *Miller* for subsection (4) applies equally well to subsection (2). This definition of "procure" is not limited to merely "giving," but is more akin to "bringing about" or "causing to happen." It follows that "procure" not only has a different definition than "sell, dispense or give away," but also has a somewhat broader definition.

¶ 37. Under the facts of the present case, we conclude that Kreuser's actions fall within the definition of "procure." Kreuser was aware that the bartender was not going to serve alcohol to Devine unless the bartender knew that someone would be driving Devine home. When asked, Kreuser agreed to be that driver. With Kreuser's agreement, the bartender was then free to serve Devine more alcohol. Had it not been for Kreuser's purposeful actions, the bartender would not have given more alcohol to Devine. Under the specific facts presented here, Kreuser brought about Devine's acquisition of more alcohol—"procuring" the alcohol for Devine for the purposes of § 125.035(2).

¶ 38. Holding that Kreuser's actions fit within the definition of procurement keeps with the legislative intent of § 125.035(2). In contrast to subsection (4)(a), where the legislature created a clear and specific prohibition on acts that allow minors access to alcohol, in subsection (2) the legislature made a clear grant of

immunity to those persons who furnish alcohol to other adults. This intent was recognized by the court of appeals in *Greene,* and we agree with that interpretation. *Greene,* 188 Wis. 2d at 370. In subsection (2), the legislature established the general rule of immunity, which effectively focuses responsibility (excluding the explicit exceptions in subsections (3) and (4)) on the drinker of the alcohol, and not on the one who provides it.

¶ 39. The only exceptions made by the legislature to the general rule of nonliability are when one person forces another to drink alcohol, Wis. Stat. § 125.035(3); misrepresents that a beverage does not contain alcohol, *id.;* or provides alcohol to a minor, *id.* § 125.035(4). It is not this court's role to read a new exception into the statute where it does not exist.

¶ 40. With that said, we recognize that this case is a tragic one—a case for which Stephenson justifiably feels that there should be some recourse. However, with regard to negligent acts that occur because of a person's intoxication, the legislature has expressed its intent to focus liability on the person who drinks the alcohol and not on the person who furnishes it or brings about its acquisition. The legislature is well within its power to modify the statute and extend liability to persons in circumstances similar to Kreuser's. We, however, feel that we cannot do so without overstepping our bounds. Given the legislature's pronouncement in § 125.035 and the common definition of "procure," we must hold that Kreuser is immune from liability under § 125.035(2).

¶ 41. We next address Kreuser's public policy argument. Even though all persons owe a general duty of care to the world at large, we have recognized that in certain circumstances, public policy may require a finding of nonliability. *Rockweit,* 197 Wis. 2d at 425. The public policy question arises independently of the question of whether or not a duty exists. *A.E. Inv. Corp.,* 62 Wis. 2d at 484. Whether public policy precludes liability in a given case is a matter of law, which is decided by this court de novo. *Gritzner,* 2000 WI 68, ¶ 27. Here, despite the fact that we find that a duty exists under Restatement (Second) of Torts § 324A, we agree with Kreuser's argument that that public policy also precludes a finding of liability in this case.

¶ 42. The application of public policy considerations is a function of the court. *Coffey,* 74 Wis. 2d at 541. Even if a plaintiff is able to establish all of the elements of a negligence claim, public policy considerations may dictate against a finding of liability. *Gritzner,* 2000 WI 68, ¶ 26. The assessment of public policy does not necessarily require a full factual resolution of the cause of action by trial. *Miller v. Wal-Mart Stores,* 219 Wis. 2d 250, 265, 580 N.W.2d 233 (1998); *Coffey,* 74 Wis. 2d at 541–42 (citing *Hass v. Chi. & N.W. Ry. Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970)). This court can, and has, decided such public policy questions on demurrer. *Coffey,* 74 Wis. 2d at 541.

¶ 43. When determining whether or not to limit a defendant's tort liability on public policy grounds, this court has identified a number of factors that must be

considered. Recovery against a negligent tortfeasor can be denied on the grounds of public policy when (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point. *Rockweit*, 197 Wis. 2d at 426; *Colla v. Mandella*, 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957). Although this type of public policy analysis is a function of the court, *Coffey*, 74 Wis. 2d at 541, here we think it is also appropriate to look at the aforementioned factors in light of relevant legislative enactments. If one or more of these factors so dictates, the court may refuse to impose liability in a case. In assessing the present case, we conclude that several of the public policy factors apply and that they preclude liability against Kreuser.[5]

¶ 44. First, the injury sustained in this case is wholly out of proportion to the tortfeasor's culpability. Devine, after he became inebriated, posed a certain amount of risk regardless of whether or not someone agreed to drive him home. Even if Kreuser did assume a duty to drive Devine home, Devine still maintained control over his own actions at the party that night. As illustrated by the facts of this case, there was no

[5] We address the second, fourth, and sixth factors because, in our opinion, they are the strongest reasons for not imposing liability, and are sufficient to support our conclusion. We do not concede, however, that the remaining three factors support the imposition of liability.

198

evidence to show who left the party first. Devine could have left the party before Kreuser, a situation which might not have been preventable even through reasonable efforts on Kreuser's part. When Devine decided to go home, he could have sought out Kreuser, but he also very easily could have driven home himself without letting Kreuser know that he had left. At the point where Devine makes this decision, Kreuser's blameworthiness is minimal and the potential harm that could be caused by Devine's intoxicated driving is wholly out of proportion to Kreuser's culpability.

¶ 45. The disparity is more drastic when viewed in light of the state's current immunity laws. If Kreuser were a social host who had served alcohol to Devine, there is little question that he would be immune from suit—a legislative judgment that those who serve or dispense alcohol should not be culpable for the torts of those served. It defies common sense to hold someone in Kreuser's position liable while immunizing someone who serves or even encourages alcohol consumption.

¶ 46. Second, to allow recovery in a situation such as this would put too unreasonable a burden upon the tortfeasor. Even if Kreuser had assumed a duty to drive Devine home, Kreuser could not reasonably have been expected to maintain the amount of control over Devine necessary to prevent Devine from ever leaving on his own to drive. The unreasonableness of this proposition is again highlighted by the fact that there is no evidence that shows whether Devine left the party before or after Kreuser did. Assuming that Devine left before Kreuser, Stephenson's position would be, essentially, that Kreuser should have been able to prevent it from happening. This is simply unrealistic. Once Kreuser agreed to drive Devine home, Kreuser would have had

199

either to follow Devine around all night, or perhaps have kept Devine confined or tied up somewhere in order to prevent Devine from wandering off without Kreuser's knowledge. For an agreement that can be made, as Kreuser suggests, by a simple nod of the head, this burden is simply too excessive.

¶ 47. Third, to allow recovery under these circumstances potentially allows the law of negligence to enter a field that has no sensible or just stopping point. As was evident in the present case, it is difficult to determine the point at which the person who agrees to drive actually assumes the duty. Is a nod of the head enough to impose a responsibility to exercise control over the intoxicated person for the rest of the night? Is a wink sufficient?

¶ 48. What happens if conditions change? Would there ever be circumstances under which someone who agrees to drive for an intoxicated person could back out of such an agreement? What if an emergency arose that required the driver to leave? What if the driver were to get sick? Could a designated driver ever transfer the responsibility? What if the intoxicated person was to become disorderly, or assaulted someone? Could the person who agrees to drive be subject to liability for any of the intoxicated person's other negligent acts?

¶ 49. There could also be effects on those outside of designated drivers. If the intoxicated person calls a cab and the cab driver is late, prompting the intoxicated person to drive—can the driver be held liable? If a company agrees to help arrange rides home from a company function, can they be held liable? Will finding liability in this case allow liability to be extended to party guests who are faced with allowing a clearly

intoxicated person to drive home? If no one steps forward and agrees to drive, can they all be held liable?

¶ 50. These are only a few examples of the extent to which liability might be carried. If we were to hold Kreuser liable under these circumstances, the possibilities for expanding liability would simply have too much potential to grow out of control, and would also threaten to run counter to the legislative enactments regarding immunity.[6]

¶ 51. Finally, we give significant weight to the fact that the production, sale, distribution, vending, and consumption of alcoholic beverages are highly regulated by the legislature. *See* Wis. Stat. §§ 68.02(1)-(2), 68.03(5), 100.30(2)(am)1., 125.01–.70, 134.77, 135.066, 139.01–.26, 167.32(4), 346.93–.935, 350.08, 406.102(3m), 944.36, 947.04 (1999–2000). Since Wisconsin's territorial days, the legislature has been extensively involved in the decision of whom to hold accountable for the negligent actions of an inebriated person. *Farmers Mut. Auto. Ins. Co. v. Gast*, 17 Wis. 2d 344, 355–63, 117 N.W.2d 347 (1962) (containing an

---

[6] The dissent characterizes our analysis here as a "parade of horribles" and dismisses it as "not the facts of the present case." Dissent op. at ¶¶ 76–77, 79. In doing so, the dissent ignores the fundamental nature of the sixth public policy factor. When analyzing a cause of action under the sixth factor, we must determine if there will be a sensible point at which a line can be drawn if liability is imposed in the present case. *Rockweit v. Senecal*, 197 Wis. 2d 409, 426, 541 N.W.2d 742 (1995). This analysis presupposes that we anticipate the extent of liability in future cases. Under the dissent's reasoning, the possibility of opening up negligence law to a field where there is no just or reasonable stopping point would essentially never be an appropriate reason to deny liability.

appendix which outlines the history of alcohol liability legislation); *see also Sorensen v. Jarvis,* 119 Wis. 2d 627, 636–37, 350 N.W.2d 108 (1984). In its current form, this regulation includes the legislature's pronouncement in § 125.035, which generally immunizes from civil liability those who procure, sell, dispense, or give away alcohol. Given this history and the current state of the law, we are reluctant to create liability where the legislature has not expressed that there should be any. We think that it is more appropriate that the legislature decide whether or not someone who agrees to drive an intoxicated person home should be an exception to the legislature's general policy of holding the intoxicated persons themselves liable for injuries they cause.

## IV

¶ 52. In conclusion, we hold that the framework of Restatement (Second) of Torts § 324A applies to the facts of this case. However, we also hold that under the facts of this case, both Wis. Stat. § 125.035 and public policy concerns prevent Kreuser from being held liable. Therefore, we reverse the decision of the court of appeals and hold that Kreuser's motion for summary judgment should have been granted.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 53. DIANE S. SYKES, J. (*concurring*). This tragic case raises important questions about liability for harm caused by drunk drivers. I agree with the majority's conclusion that § 324A of the Restatement applies to the analysis of "designated driver" liability. I also agree with the majority's conclusion that public policy considerations operate to preclude designated driver liability

here. The case for statutory immunity is weaker, however, because the designated driver's alleged liability in this case does not stem from his "procurement" of alcohol for the drunk driver—immunized under Wis. Stat. § 125.035(2)—but from his failure to drive the drunk home.

¶ 54. Kathy Stephenson's husband does not appear to be arguing that John Kreuser's agreement to drive Michael Devine home from the company holiday party contributed to Devine's drunkenness in such a way as to be a cause in fact of her death. I suspect it would be difficult to determine the causal effect of the extra drinks the bartender served Devine after Kreuser agreed to drive him home.

¶ 55. The statute immunizes against "civil liability arising out of the act of procuring alcohol . . . ." Wis. Stat. § 125.035(2). I agree that Kreuser's assumption of responsibility for driving Devine home could be viewed as a form of "procurement" under the statute, in the sense that it kept the drinks coming when they otherwise would have been cut off. Kreuser's liability, however, is not premised on his role as a "procurer" of alcohol for Devine; it is premised on his failure to perform a voluntary undertaking under § 324A.

¶ 56. As the majority notes, § 324A provides that one who "undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person" is liable for the negligent performance of that undertaking if:

 (a) his failure to exercise reasonable care increases the risk of harm, or

 (b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the
 other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1967).

¶ 57. This case falls within the first of these
possible theories of liability, in that the designated
driver's failure to fulfill that role increased the risk that
the drunk he had agreed to drive home would get
behind the wheel himself and hurt someone. It is
conceivable that another "designated driver" scenario—
where the drinking is done entirely in reliance on the
ride home—might fall within the third theory of liabil-
ity under § 324A. In such a case, it might be possible to
prove a causal link between the ultimate harm and the
drunk driver's reliance on the designated driver's un-
dertaking. But I do not understand the plaintiff to be
making that argument here, and to do so risks coming
up against the statute's immunity. So, while I agree
with the majority's analysis of the term "procurement"
for purposes of statutory immunity under Wis.
Stat. § 125.035(2), I do not think it is applicable to the
type of liability asserted in this case.

¶ 58. Considerations of public policy, however, op-
erate to preclude liability under § 324A, for the reasons
thoroughly articulated by the majority opinion. Wiscon-
sin has statutorily immunized those who provide, pro-
cure or sell alcohol from liability for harm caused by
people who drink too much. Where those who provide
the means of intoxication are statutorily immune, it
seems entirely disproportionate and unduly burden-
some to hold designated drivers liable at common law,
considering their relative culpability. An injured
person's recourse is against the drunk driver, not those
who provide the drinks or fail to drive him home.
Accordingly, I respectfully concur.

204

¶ 59. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I agree with Part I of the majority opinion, the order of the circuit court, and the decision of the court of appeals. All impose liability on Kreuser for failing to keep his promise to drive an intoxicated driver home. However, I disagree with Parts II and III of the majority opinion, which relieve Kreuser of liability for breaking his promise.

## I

¶ 60. This is the case of a good Samaritan gone bad. The majority opinion imposes liability on Kreuser because he "gratuitously undertook to drive Devine home . . . for the protection of other persons or property. When Kreuser decided not to drive Devine home, a reasonable jury could have found that Kreuser failed to exercise reasonable care, and that such a failure increased the risk of harm to other persons and property." Majority op. at ¶¶ 19 and 24. I agree with the majority opinion on this issue. Kreuser is liable for breaking his promise. *See* Restatement (Second) of Torts § 324A (1967).

## II

¶ 61. I disagree with the majority opinion that Kreuser is immune from liability under Wis. Stat. § 125.035(2) as a procurer of alcoholic beverages for Devine. Wisconsin Stat. § 125.035(2) immunizes against the "civil liability arising out of the act of procuring alcohol."

¶ 62. This case is about Kreuser's failure to keep a promise to drive Devine home, a promise to keep this dangerous intoxicated person off the road. Kreuser's negligence in failing to keep the promise increased the risk of an immediate and foreseeable harm.

¶ 63. Kreuser cannot be immunized from liability for his broken promise by Wis. Stat. § 125.035(2), which immunizes a person against civil liability for procuring alcoholic beverages for another. By using Wis. Stat. § 125.035(2) in the present case to immunize Kreuser for liability arising out of his broken promise to be the designated driver, the majority opinion expands the immunity statute far beyond its clear and unambiguous scope. The immunity statute does not apply in the present case because imposing liability on Kreuser for breaking his promise is unrelated to and outside of the clear and unambiguous scope of this immunization statute.

### III

¶ 64. I also disagree with the majority opinion's application of public policy considerations to relieve Kreuser of liability.

¶ 65. I conclude that relieving a person of liability to a victim when the person deliberately fails to keep his or her promise to be a designated driver is contrary to this state's public policy. Our public policy is that people who deliberately fail to keep their promises are liable, when the failure to keep a promise has such foreseeable, immediate, and tragic consequences. Furthermore, this state's public policy is to reduce death and injury on our roads caused by drunk drivers by encouraging people not to drink and drive, by imposing stringent criminal penalties on people who do drink and drive, by imposing civil liability on those whose negligence is a substantial factor in causing injury, and by encouraging the use of designated drivers.

¶ 66. The majority opinion appears to conclude that of the six public policy factors to be considered, three factors point to imposing liability on Kreuser. In

contrast, I apply the same six public policy considerations to the facts of the present case and conclude that none of them points to relieving Kreuser of liability in this case.

¶ 67. (1) The majority opinion does not discuss whether the injury was directly caused by Kreuser's negligence. Legal responsibility is limited to those causes that are closely connected with the result and of such significance that liability is justified.[1] Conduct is causal if it is "a substantial factor in producing the injury."[2] A substantial factor is conduct that "has such an effect in producing the harm as to lead the trier of fact . . . to regard it as a cause, using that word in the popular sense."[3] Several substantial factors can exist, all contributing to the same result.[4]

¶ 68. Kreuser's negligence may not have been the sole factor or even the primary factor in causing the injury, but under the law it need only be a substantial factor. Kreuser's negligence was in fact a substantial factor in causing the injury. The negligence of others also contributed to causing the injury, and these persons have been named as co-defendants in this lawsuit. That others might have contributed to the injury does not absolve Kreuser of liability for the injury directly caused by his negligence.[5]

---

[1] W. Page Keeton, *Prosser and Keeton on the Law of Torts* 264 (5th ed. 1984).

[2] *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 617, 292 N.W.2d 630 (1980).

[3] *Id.* at 617–18.

[4] *Id.* at 618.

[5] Wis JI—Civil 1500 and comments (1999); W. Page Keeton, *Prosser and Keeton on the Law of Torts* 268 (5th ed. 1984).

¶ 69. Because I conclude that Kreuser's negligence was a direct and substantial factor in causing the injury, I further conclude that this policy consideration points to imposing liability on Kreuser.

¶ 70. (2) The majority opinion concludes that the injury is too wholly out of proportion to Kreuser's culpability in deliberately failing to keep the promise to drive an intoxicated person home. Majority op. at ¶¶ 44 and 45. I disagree.

¶ 71. The concurrence asserts that it is disproportionate and unduly burdensome to hold a designated driver liable when those who procure the alcoholic beverages are immune from liability. The concurrence then concludes that only the intoxicated driver should be held liable to the victim. The concurrence mistakenly attributes causal negligence solely to the intoxicated driver, "irrespective of the other causes which necessarily contributed to the result."[6]

¶ 72. Wisconsin's comparative negligence rules are designed to impose liability in relation to each party's causal negligence in bringing about the injury.[7] The relative culpability of each person is weighed against the relative culpability of the others, including the accident-causing tortfeasor, here the intoxicated driver.[8] The trier of fact, the judge or jury, allocates responsibility among those who caused the injury. That the legislature has immunized the procurer of alcoholic beverages from liability and that the intoxicated driver is causally negligent and liable do not, and should not, absolve Kreuser of liability for his culpability in break-

---

[6] Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules,* 68 Marq. L. Rev. 539, 547 (1985).

[7] *Id.* at 547–48.

[8] *Id.* at 547–48.

ing his promise. Such absolution is inconsistent with a liability system based upon the idea of comparative fault.

¶ 73. The issue in the present case is who should bear the risk of loss, the innocent victim injured by the intoxicated driver, or the designated driver who broke his promise to drive the intoxicated driver home? As between these two parties, I conclude that the risk of loss should be on the person who broke his promise and whose negligence was a substantial factor in causing the victim's injury.

¶ 74. In the present case, Kreuser's culpability for failing to keep his promise is significant. Kreuser could have reasonably foreseen that his failure to keep his promise could result in death or serious injury. Kreuser's liability is not disproportionate to his culpability. Thus, this policy consideration also points to imposing liability on Kreuser.·

¶ 75. (3) The majority opinion does not discuss whether in retrospect it is highly extraordinary to conclude that the negligence of allowing an intoxicated driver to drive would bring about the harm of the intoxicated driver killing or injuring another driver, a passenger, or a pedestrian. I conclude that it is not highly extraordinary to reach this conclusion and that this policy consideration again points to imposing liability on Kreuser.

¶ 76. (4) The majority opinion states that allowing recovery would place too unreasonable a burden on Kreuser. Majority op. at ¶ 46. The majority parades its "horribles": an alleged promisor who may have merely nodded his head in agreement to take an intoxicated driver home but who may not have intended to assume such a responsibility; an alleged promisor who might not be able to stop the intoxicated driver from leaving

alone. But the facts of the present case are not one of the horribles posed. Kreuser expressly promised to drive Devine home and then deliberately failed to keep the promise. Majority op. at ¶ 6 n.2, ¶ 8 n.3. Imposing liability on Kreuser does not mean liability would be imposed under the very different fact situations proffered by the majority opinion's horribles.

¶ 77. The horribles seem to raise issues of proof and the availability of defenses. Courts know how to deal with disputes about whether a promise was made, and courts can determine the validity of defenses on a case-by-case basis. Thus, I again conclude that this policy consideration points to imposing liability on Kreuser.

¶ 78. (5) The majority opinion does not discuss whether allowing recovery would be likely to open the way to fraudulent claims. Fraudulent claims are not likely if the present claim is recognized. Thus, I once again conclude that this policy consideration points to imposing liability on Kreuser.

¶ 79. (6) The majority opinion concludes that allowing recovery under the circumstances of this case potentially allows the law of negligence to enter a field that has no sensible or just stopping point. Again the majority opinion engages in a parade of horribles: an alleged promisor who may have nodded his head in agreement to take an intoxicated driver home; an alleged promisor who could not stop the intoxicated driver from leaving on his own; a taxi company that fails to keep a promise; and multiple promisors, none of whom keeps the promise.

¶ 80. Once again, these horribles are not represented by the facts of the present case. The facts of this case offer a good place to start imposing liability on a designated driver who deliberately breaks his promise.

This case may also turn out to provide a sensible and just stopping point for imposing liability on a designated driver.

¶ 81. When other distinguishable fact situations arise such as those the majority opinion poses, the court can determine whether liability is appropriate under those circumstances. Thus, I conclude once more that this policy consideration points to imposing liability on Kreuser.

¶ 82. The majority opinion ultimately falls back on the argument that allowing recovery in the present case contravenes the legislature's prerogative to determine who shall be held accountable for the distribution, vending, or consumption of alcoholic beverages. Majority op. at ¶ 51. This argument is unpersuasive because, as I stated previously, this case does not involve liability for the distribution, vending, or consumption of alcoholic beverages. This case involves liability when a promisor fails to keep a promise to drive an intoxicated driver home.

¶ 83. For the reasons set forth, I do not join Parts II and III of the majority opinion relieving Kreuser of liability arising out of his broken promise.

¶ 84. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.